Turner v. Bachelder.

# LYMAN TURNER vs. JAMES R. BACHELDER.

Where a farm was leased for a term of years, and by the terms of the lease the lessor agreed to furnish farming tools to carry on the farm, " and four cows, one horse, and other stock sufficient to eat up all the hay that shall grow on said farm ;" and the lessee agreed that the lessor should have " one half of all the corn and grain, and potatoes that shall grow on the farm, and half the calves, and half the lambs, and half the wool ;" *it was held*, that the hay, after it was harvested by the lessee, was not the property of the lessor, and that he could not maintain replevin therefor against an officer who had attached it as the property of the lessee.

REPLEVIN for a quantity of hay taken by *Bachelder*, as a deputy sheriff, on a process in favor of *A. W. Ladd*, against *Lemuel Turner*, as the property of the latter. The facts were agreed for the decision of the Court thereon. *Lemuel Turner* had been in possession of the farm whereon the hay was cut for ten years next before the making of the lease of the premises from the plaintiff to him, dated *April* 1, 1836. The statement of facts shows, that the plaintiff had a bond for a deed of the premises from one *Fogg* and a parol license from him to occupy the premises at the time the lease was made, but does not show whether *Fogg* had or had not title, or under whom *Lemuel Turner* occupied during the ten years. By the lease, *Lemuel Turner* who was the father of the plaintiff, was to hold the farm for five years from its date ; *Lyman* was to furnish his father, *Lemuel*, with all necessary farming tools to carry on the farm, to pay the money taxes thereon, " to furnish four cows, one horse, and other stock sufficient to eat up all the hay that shall grow on said farm," and that the father should have the milk of the cows. The father agreed on his part to carry

on the farm for five years, to pay the highway taxes, and further agreed with *Lyman* " that he shall have one half of all the corn and grain and potatoes that shall grow on said farm, all the calves the said cows shall have when they are fit to wean, and to have one half of the wool and half of the lambs that may come from the sheep kept on said farm," and not to commit or suffer strip or waste. These are all the provisions of the lease. The hay replevied was grown upon the farm in 1837, and harvested by *Lemuel Turner*, and was taken by the defendant, *November* 3, 1837. The stock kept upon the farm was the property of the plaintiff, and there was not more than sufficient hay for their keeping. During the year 1837, the plaintiff lived in a different part of the State from that in which the farm was.

*Boutelle*, for the plaintiff, contended, that the plaintiff was the owner of the land on which the hay was cut against all unless *Fogg*. *Lemuel Turner*, and all claiming under him, are estopped to deny the land to be his. *Moshier* v. *Reding*, 3 *Fairf.* 478. The stock on the farm belonged to the plaintiff, and the lease states explicitly that he was to have as much hay as the stock would eat. The facts show, that there was only sufficient hay for that purpose. This is equivalent to a reservation of the grass. If it be true, that generally the lessee is entitled to the crops, still it is competent for the lessor to reserve any part to himself. This was done as to the hay, and the lessee was to have none of it, unless there was a surplus, after the stock had been fed through the winter. The lessor might have maintained an action against any one trespassing on the grass while growing. *Little* v. *Palister*, 3 *Greenl.* 6. And when cut the hay did not become the property of the lessee, but remained the property of the plaintiff.

*May*, for the defendant, contended, that by the lease an interest in the soil passed during the existence of the term so that the lessee could maintain trespass for any unlawful entry upon it. 9 *Johns. R.* 108 ; 16 *East*, 116. A lease for years is a contract for the possession and profits of the land for the recompense of rent, and the property in the crops vests in the lessee, until by sale or otherwise it is vested in another. 4 *Kent*, 85 ; *Chandler* v. *Thurston*, 10 *Pick.* 205. The mere fact that the lessee was to

keep the cattle from the hay does not pass the property to the lessor. If the lessee should die, the hay would go to his administrator, and not to the lessor. *Wait, Appt.* 7 *Pick.* 100. The covenants and agreements in the lease in favor of the plaintiff are to be regarded as the stipulated rent, and they give no lien upon the produce of the farm, nor would a lien upon the crops, nor a reservation of part of them, have been effectual against an attaching creditor without a delivery after a severance, and before an attachment had intervened. *Smith* v. *Putnam,* 3 *Pick.* 221; *Butterfield* v. *Baker,* 5 *Pick.* 522; *Bailey* v. *Fillebrown,* 9 *Greenl.* 12. But be the right of property in whom it may, the plaintiff had no right to the possession of it when it was attached; and this action therefore cannot be maintained. *Wheeler* v. *Train,* 3 *Pick.* 255; *Vincent* v. *Cornell,* 13 *Pick.* 294; *Wyman* v. *Dorr,* 3 *Greenl.* 183; *Lunt* v. *Brown,* 1 *Shep.* 236.

The opinion of the Court was drawn up by

EMERY J. — The plaintiff holding certain real estate in *Rome,* by a parol agreement with *Dudley Fogg,* and having a bond for a deed of it, by indenture on the 1st of *April,* 1836, leased it as his farm with all the privileges and appurtenances thereto belonging, to his father, *Lemuel Turner,* for five years.

The facts disclosed, shew a praiseworthy conduct in the son, if it were intended as a mark of filial respect.

But whatever might be the motives which induced the arrangement, as an attachment has been made of the hay on mesne process, and seized on execution against *Lemuel Turner,* we must ascertain the rights of the parties under the lease. The hay was replevied after the seizure of it on the execution. This hay grew on the place in 1837, and was harvested by *Lemuel Turner.* The plaintiff was absent in *Penobscot* county all that season, and *Lemuel Turner* was in possession and had been for ten years previous.

If the intention was, that all the hay raised should be the several and exclusive property of the plaintiff, the parties to the lease were unfortunate in the wording of the instrument. We cannot infer it from such terms as are employed. *Lemuel Turner* has the exclusive right to the farm for five years, with all its privileges and

appurtenances, without any right in the plaintiff to interfere, till the expiration of the term. Notwithstanding *Lemuel* was in possession before taking the lease, he would by that act be estopped from disputing *Lyman's* general title. *Binney* v. *Chapman & al.*, 5 *Pick.* 124; *Codman* v. *Jenkins*, 14 *Mass. R.* 93.

Although a man upon his feofment or conveyance cannot reserve to himself parcel of the annual profits themselves, as to reserve the vesture or herbage of the land or the like, for that would be repugnant to the grant, as stated in *Co. Lit.* 142, *a*; yet we know that rent is often reserved in a portion of the produce. But the whole property in such produce remains in the lessee till it is divided, and the lessor's share delivered to him or set apart for his use. A creditor of the lessee therefore may legally seize the whole. On his decease before such division and delivery, it would pass to his executor or administrator. *Butterfield* v. *Baker*, 5 *Pick.* 522; *Dockham* v. *Parker*, 9 *Greenl.* 137; *Wait, Appellant*, 7 *Pick.* 100.

On the facts agreed, we perceive no legal ground upon which the plaintiff can sustain his action. He must therefore become nonsuit, and judgment be rendered for a return with damage of six per cent. on the penal sum in the bond, and costs in favor of the defendant.