ALFRED COLVILLE, Respondent, *v.* WILLIAM J. MILES, Appellant.

By the terms of a lease of a farm for dairy purposes, the tenant agreed to take charge of the stock, in which he and his landlord had a joint interest, to raise enough on the place to feed it, and if enough was not raised to buy what was necessary. In an action of replevin by the landlord to recover farm products levied on by defendant by virtue of attachments against the tenant, it appeared that sufficient was not raised on the farm to feed the stock. *Held,* that the title to the farm products was in the tenant, not in the landlord; and so, that plaintiff was not entitled to recover.

*Colville* v. *Miles* (45 Hun, 236), reversed.

*Heald* v. *B. M. Fire Ins. Co.* (111 Mass. 38), disapproved.

(Argued April 15, 1891; decided June 2, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made July 1, 1887, which affirmed a judgment in favor of

plaintiff, entered upon a verdict and affirmed an order denying a motion for new trial.

This was an action of replevin, begun October 18, 1886, to recover a quantity of hay, oats and straw grown in that year by a tenant on a farm owned by the plaintiff, which, in April, 1884, was leased with stock, in which the landlord and tenant were jointly interested, for an annual rent of $960, payable in monthly installments of eighty dollars each. The tenant, Patrick Kane, occupied the farm until the 1st of October, 1886, when he left, indebted to the plaintiff for $100 rent, and to various persons. On the fifth, sixth and fourteenth of that month the defendant, a constable, seized a part of the hay, oats and straw grown on the farm, by virtue of six warrants of attachment issued by a justice of the peace. The property was taken by the sheriff under the process issued in this action and was subsequently delivered to the plaintiff.

From April, 1880, to April, 1884, Kane worked the farm on shares, he having one-third and the plaintiff two-thirds of its products, but in April, 1884, the farm, the stock owned by the landlord, as well as that in which both were interested, was let as above stated. On the trial the value of the property was assessed at one thousand dollars and the title was found to be in the plaintiff.

Further facts are stated in the opinion.

*M. N. Kane* for appellant. The title to the property was clearly in Kane and not in Colville. (*Hawkins* v. *Giles*, 45 Hun, 318; 12 N. Y. S. R. 426; *McCombs* v. *Becker*, 3 Hun, 342; 5 T. & C. 550; *Johnson* v. *Crofoot*, 53 Barb. 574; 37 How. Pr. 59; *Steffin* v. *Steffin*, 4 Civ. Pro. Rep. 179; *Briggs* v. *Austin*, 29 N. Y. S. R. 249; *Turner* v. *Bachelder*, 17 Me. 257; *Van Hoozer* v. *Cory*, 34 Barb. 9; *Crissey* v. *Sabre*, 17 Hun, 120; *Reynolds* v. *Ellis*, 103 N. Y. 115; Benjamin on Sales, § 79; *Andrews* v. *Newcomb*, 32 N. Y. 417; *White* v. *Brown*, 5 Lans. 78; *Storm* v. *Livingston*, 6 Johns. 44; *Treat* v. *Hathorn*, 3 Hun, 646; *Schofield* v. *Whitlegge*, 49 N. Y. 249; *Ryerson* v. *Kauffield*, 13 Hun, 387; *Rawley* v. *Brown*, 18 id.

456.) Assuming that Colville had the title to the property it is perfectly apparent that Kane's interest in it was a leviable one. ( *Van Antwerp* v. *Newman*, 2 Cow. 543 ; 22 N. Y. 232, 233 ; *Putnam* v. *Wyley*, 8 Johns. 432–435 ; *Hull* v. *Carnley*, 11 N. Y. 501 ; 17 id. 202 ; Edwards on Bailments, § 263.) The verdict was against the evidence, and the judgment should be reversed for that reason. (*Bryan* v. *Wilson*, 5 N. Y. S. R. 58.) The plaintiff cannot have a verdict for the value of the property unless it has been returned to the defendant. Here the plaintiff took the property. (Code Civ. Pro. § 1726 ; *Phillips* v. *Melville*, 10 Hun, 211 ; *Dwight* v. *Enos*, 9 N. Y. 470 ; *Rockwell* v. *Saunders*, 19 Barb. 473.)

*John Vincent* for respondent. The verdict of the jury will not be interferred with by this court, as there was evidence to support it. (*Hayer* v. *Thompson*, 2 Hun, 518 ; *Perry* v. *Lansing*, 17 id. 34; *Betsinger* v. *Chapman*, 24 id. 503 ; *Morss* v. *Sherile*, 63 Barb. 21 ; *Godfrey* v. *Moser*, 66 N. Y. 250, 252 ; *McIntyre* v. *Strong*, 16 J. & S. 127 ; *Kolner* v. *Lintz*, 9 Daly, 17 ; *Gescheidt* v. *Quirk*, 5 Civ. Pro. Rep. 38.) The title to the property was in Colville. (*Heald* v. *B. M. F. Ins. Co.*, 111 Mass, 38 ; *Welton* v. *Holmes*, 26 Wkly. Dig. 24 ; Code Civ. Pro. §§ 2907, 2909 ; *Talbot* v. *Hill*, 68 Ill. 106 ; *Samson* v. *Rose*, 65 N. Y. 411 ; *Reedar* v. *Sayre*, 70 id. 180.)

Follett, Ch. J. Frequently the title to the products of lands leased for agricultural purposes is reserved by the lessor, or a lien is created as security for the payment of rent, but no such claim is put forward in this case. It is not asserted that the landlord and tenant owned the products jointly, and title was in the one or the other in severalty.

This action was brought and maintained on the theory that the plaintiff held the legal title to the property in question. The only witness who gave evidence in support of the action was the plaintiff who testified : " As near as I can recollect he (Kane) was to take charge of the stock, he was to raise enough stuff on the place to feed the stock, and if there was not enough

**162** COLVILLE *v.* MILES. [June,

Opinion of the Court, per FOLLETT, Ch. J.

to carry them through the year he was to buy what was necessary to carry it out, which he has not been doing for the last two years; the stuff was not to be sold; there was forty odd heads of cattle, you do not raise stuff to sell when you have cattle. \* \* \* The hay and grain were not to be removed, it was not raised to sell, it belonged to the cattle. Q. Did you have any interest in the farm after you made the lease to Mr. Kane, or the products of it in any way? A. No, I gave that up with the lease of the cows; I leased the cows and I leased everything. I gave him all that the ground produced; I never received any of the products for the sale of young stock, or produce sold from said farm. I never gave any direction about working the farm, or made any inquiry of Kane as to what he was using on the farm or what he sold off the farm. I did not care so long as he raised the milk; I told him he could use anything he wanted except the stock. I was entitled to two-thirds of the stock when it was sold; he sold it all and pocketed it and I never got my two-thirds; \* \* \* he put on seven cows; he kept sheep on the farm; I do not know what he did with them; \* \* \* when the farm was leased the hay and grain was not mentioned at all; he was to raise enough stuff on the farm to keep the cattle; if there was not enough raised on the place he was to buy what was requisite; what was raised on the place was to be fed to the cattle; \* \* \* there was no conversation particularly in which anything was said about feeding the cattle from the products raised on the farm; he was to raise the stuff and support the cattle; if the place did not support the cattle he was to buy whatever was necessary; that was the agreement; I cannot state what he said; I am stating what I said; I said it and he agreed to it." This is all of the testimony given in behalf of the plaintiff which tends to show that he reserved the title to the products of the farm. The tenant, and a witness who heard the bargain, testified that it was not agreed that the crops were to be fed on the place, and that no reservation was made in respect to them.

The court instructed the jury, in effect, that if the plaintiff's evidence was true, the title to the property was in him, and

that he was entitled to recover, to which the defendant excepted. The court was also asked to dismiss the complaint upon the ground that the plaintiff had failed to establish title, which was refused, and an exception taken.

In this we think the court erred. If the plaintiff had the title to this property it might have been taken in execution for his debts, or he could have sold it to a purchaser in good faith and for value, to the exclusion of the tenant and all claiming under him. Such consequences do not flow from the contract testified to by the plaintiff. He did not testify that title to the hay and grain was reserved by him, but that the tenant agreed to feed enough of it on the farm to support the stock. This did not amount to a reservation of title, but was an executory contract, for a violation of which the landlord could have recovered damages.

The question involved in this case has been several times considered by the Supreme Court of this state. In *Johnson* v. *Crofoot* (53 Barb. 574; *S. C.* 37 How. Pr. 59), a farm was let by a written lease for an annual money rent. The lease contained a stipulation that the tenant "should feed out the hay ·and straw in a careful and farmer-like manner," and it was further agreed that if sufficient hay and straw was not raised to keep the stock the landlord was to supply the deficiency. It was also provided : " The parties of the first part (landlords) are to have full title, with the privilege of taking possession at any and all times, of any and all products of the farm in payment of the balance due on the rent." A judgment was recovered against the tenant during the existence of the lease and an execution issued to the defendant, who levied upon and sold about sixty tons of hay raised on the farm by the tenant and then being in his actual possession on the farm. The plaintiff brought trover, claiming that under the lease the title to the hay never passed to or vested in the tenant, but that it was to remain on the farm for the purpose of feeding the stock. Verdict was directed for the defendant at the Circuit, which direction was sustained at General Term, the court saying: " But it is argued by the counsel for the plaintiff that

it (lease) was not a mortgage and that the title to such hay as should grow on the place did not pass to Tift (the tenant) because he stipulated in the lease that he would cut and get in in good order all the hay, and that he would feed out the hay and straw in a saving manner, and because it was further stipulated that he was to have the privilege of keeping a span of horses all the time and a third horse during haying, which, it is claimed, is inconsistent with the idea that the title to the hay was to be in him." In answer to this contention the court said : " The covenant on the part of Tift was to save all the hay and straw and to carefully feed it to the stock, and to keep but two horses, except during haying time, was only an agreement binding on him at law and if he chose to keep more horses, or to sell and improvidently use the hay it did not authorize Miller and Rumble, the lessors, to interfere with him, either by taking possession of it (for they were entitled to possession only as security for the unpaid rent), or to restrain such use of it by injunction." In *McCombs* v. *Becker* (3 Hun, 342 ; *S. C.,* 5 T. & C. 550) the defendant leased his farm and forty cows for a money rent. It was stipulated that the tenant should take good care of the cows, and in case the hay raised on the farm should be insufficient to winter them, the landlord should supply the deficiency at the rate of $3 per ton, and if there should be a surplus the landlord should have it and pay the tenant $3 per ton for it. A judgment was recovered against the tenant and an execution issued, under which part of the hay was purchased by the plaintiff, and afterwards the defendant (the landlord) converted it to his own use. In an action brought for the conversion, it was held that the plaintiff was entitled to recover, the court saying: " True, the landlord was to have the surplus hay and pay $3 per ton for it, but this was an executory contract for its purchase, the breach of which would be compensated in damages. It follows that the hay was the tenant's and subject to sale upon execution against him."

*Hawkins* v. *Giles* (45 Hun, 318) arose over a lease of a farm and seven cows from April 1, 1883, to April 1, 1884, for $175

rent. The lessee agreed " to feed out all the fodder on said farm that is raised on said farm  *  *  *  and winter said stock, seven cows, through to grass in the spring of 1884 on hay." In December, 1883, an execution creditor of the lessee levied upon about twenty-five tons of hay grown upon the farm during that year, which was sold to the plaintiff in the action. The owner of the farm prevented him from taking the hay, claiming : (1) That the tenant left without fully paying the rent ; (2) that the hay was required to keep the cows through to grass of 1884 ; (3) that he was entitled to the manure which would be made by the hay being fed on the farm. It was held that the title to the hay was in the tenant and was subject to sale under the execution, and the judgment entered in favor of the plaintiff was affirmed.

*Steffin* v. *Steffin* (4 Civ. Pro. Rep. 179 ; *S. C.*, 17 N. Y. W. Dig. 418) arose over an agreement to cultivate a farm on shares, the occupant agreeing to deliver " one half of all the products of said farm to (the owner) Mary A. Lockwood." An execution was issued against the occupant and levied upon grain grown on the farm. It was held that the title to the property was in the occupant, the owner having a lien.

In *Turner* v. *Bachelder* (17 Me. 257), a farm, with tools, four cows and other stock, was leased for a term of years, the landlord to have " one-half of all the corn and grain and potatoes that shall grow on the farm, and half of the calves and half of the lambs and half of the wool. There was a clause in the lease that the lessor was to furnish four cows, one horse and other stock sufficient to eat up all the hay that should grow on said farm." The hay was levied upon and sold by a creditor of the lessee, who was held to have a leviable interest in it, and that the lessor had no title to it.

In *Symonds* v. *Hall* (37 Me. 354), a farm was worked upon shares. By one of the terms of the agreement " one-half of the hay cut on the farm is to be eat by the stock kept on the farm and the other half of the hay is to be divided equally between the contracting parties." An execution creditor of the occupier seized and sold the hay. The owner of the land

brought trover.    It was held that the title to the hay before division was in the occupier and that the plaintiff was not entitled to recover for the undivided hay sold under the execution.

In *Orcutt* v. *Moore* (134 Mass. 48) the principle decided in the three cases last cited was held to be the law in Massachusetts.

The case at bar was decided upon the authority of *Heald* v. *Builders' Mutual Fire Ins. Co.* (111 Mass. 38) in which it was held that a clause in a lease similar in effect to the agreement testified to by the plaintiff, amounted to a reservation of the title to the owner of the land.    This case seems to be in conflict with the cases decided by the Supreme Court of this State, and believing the rule declared by our courts rests upon well recognized principles we must decline to follow the Supreme Court of Massachusetts, and overrule the judgments of our own courts.

The judgment should be reversed and new trial granted, cost to abide the event.

All concur, except BROWN, J., not voting.

Judgment reversed.