NEUBAUER and another, Appellants, vs. GABRIEL, imp., Respondent.

*September 29 — October 17, 1893.*

*Lease of chattels: Mortgage by lessee: Estoppel.*

1. A father purchased personal property and immediately leased it to his son, who had been present and had selected the property when the purchase was made. The son took possession under the lease, and while so in possession mortgaged the property to persons who had given him credit on the faith of his ownership thereof. Afterwards

the father took possession, terminating the lease, as by its terms he was authorized to do. In replevin by the mortgagees against the father, it is *held* that the son had no right to give the mortgage, and that the father, not having said or done anything to mislead the mortgagees or induce them to give credit to the son, was not estopped to claim the property.

2. Assuming that the mortgage operated as an assignment of the son's interest in the lease, yet the mortgagees took subject to the terms of the lease and were thereby estopped to deny the lessor's title.

APPEAL from the Circuit Court for *Brown* County.

Replevin. The defendant *Chislain Gabriel* is the father of the defendant John Gabriel. About January 1, 1892, *Chislain* mortgaged his farm and raised $800, and through the agency of his daughter bought the personal property in question, to be placed in the Arlington Hotel in De Pere, and the same was placed therein, with the view of leasing the same to the said John. On January 2, 1892, the said *Chislain* did lease said personal property then situated in said hotel to the said John for the term of two years, with the privilege of two additional years, at an annual rent of $60. In March, 1892, said *Chislain* got said personal property insured in his own name and for his own benefit, and paid therefor a premium of $18. On May 21, 1892, while the said John was in possession of said property under said lease, running said hotel, he mortgaged the said personal property to the plaintiffs to secure the payment of $250, and such mortgage was filed May 24, 1892. In July, 1892, *Chislain* took possession of said personal property and said hotel, and retained the same until replevied in this action. Soon after *Chislain* took possession of said hotel, the said John left. About November 1, 1892, the plaintiffs demanded the possession of said property under their said chattel mortgage, which *Chislain* refused to deliver, and thereupon, on November 3, 1892, the plaintiffs commenced this action of replevin to recover said personal property described in said lease and said chattel mortgage. *Chislain*

defended on the ground that John had no interest in the property except as such lessee, and that said personal property belonged to him, the said *Chislain*.

Upon the trial the court found, in effect, in addition to the facts stated, that *Chislain* did not wrongfully detain said personal property nor any part thereof; that the plaintiffs were not entitled to the possession of said property by virtue of said chattel mortgage or otherwise, and were not the owners thereof; that said *Chislain* is and was at all times the owner of said personal property, and is entitled to the possession of the same; that the value thereof was $250, and that the defendant not having waived in his answer claim to return of the property, and in open court waived the return of the same, it was and is determined that *Chislain* is entitled to recover the value thereof, and damages for the detention thereof, in the sum of $4.15, being the interest on said value from November 3, 1892. At the instance and request of the plaintiffs the court further found, as matters of fact, that John, for four months next preceding the date of the chattel mortgage, was in the actual possession of said hotel and the furniture therein, and was in the control and management thereof, carrying on the business in his own name, with the knowledge and consent of said *Chislain*, but that the said *Chislain* was the owner of the property, having leased the same to the said John; that the plaintiffs, respectively, furnished the said John with meat and groceries for said hotel to the amount named, on the credit of said John, and believing and relying upon the fact that said John was the sole proprietor of said hotel and the property therein, and the sole owner thereof; and that said indebtedness secured by said chattel mortgage accrued before the commencement of this action; that neither of the plaintiffs had any knowledge or information that said personal property or any part of it belonged to or was claimed by *Chislain* until after said in-

debtedness had accrued; that the plaintiffs demanded possession, and the same was refused, as stated.

And as conclusions of law the court found that the said *Chislain* is entitled to a judgment herein for the value of said personal property, and interest from November 3, 1892, as damages, assessed and allowed by the court at $4.15, and such judgment to be entered as well against the plaintiffs as their sureties on the replevin bond, for the sum of $254.15, and costs and disbursements of this action. From the judgment entered thereon accordingly, the plaintiffs appeal.

For the appellants there was a brief signed by *John Smith* and *Ellis & Merrill,* attorneys, and *E. H. Ellis,* counsel, and oral argument by *E. H. Ellis.*

*Thomas R. Hudd,* for the respondent.

CASSODAY, J. It is pretty clearly established that the father, *Chislain,* raised $800 by mortgaging his farm, and then, through the agency of his daughter, Mary, purchased the property in question for himself, but with the purpose of leasing the same to his son, John, and thus starting him in the hotel business, as mentioned in the foregoing statement. Soon after the property was so purchased, the father procured an insurance thereon for his own benefit. The lease was given, as stated, and is in the ordinary form. The lease runs to the son directly, and to no one else. By its terms the son was expressly required to keep the property leased in repair, and was expressly prohibited from underletting the same without the consent of the father; and the father was thereby expressly authorized to terminate and cancel the lease, and to take the property covered by it from the possession of the son and from the hotel, upon any failure of the son to pay the rent at the time expressed in the contract, or in case he should underlet the property so leased without the consent of his father. The father did enter and take such possession of the prop-

erty, and thus terminated the lease, and held the same for more than three months prior to the commencement of this action, as mentioned in the foregoing statement. True, the son had given the chattel mortgage to the plaintiffs prior to the time his father had so taken possession; but the lease gave to the son no power, right, or authority to sell or mortgage the property therein described, or any part of it. Assuming that such mortgage was, in legal effect, an assignment of the son's interest in the lease, yet such assignees were compelled to take such assignment subject to all the equities between the original parties, and were bound to perform all the agreements therein contained and annexed to the property so leased. *Martineau v. Steele*, 14 Wis. 272; *Wittman v. M., L. S. & W. R. Co.* 51 Wis. 91; *Gordon v. George*, 12 Ind. 408; *McDowell v. Hendrix*, 67 Ind. 518; *Patten v. Deshon*, 1 Gray, 325. But, if the plaintiffs be regarded as assignees of the lease, then they were bound to know the terms and contents of the lease, and were subject thereto, and were thereby estopped from disputing the father's title as such lessor. *Barroilhet v. Battelle*, 7 Cal. 450. But the plaintiffs have not claimed the possession of the property under the lease, as assignees thereof, but as legal owners of the property, entitled to the absolute possession thereof as such owners. The cause of action alleged and sought to be maintained ignores any title to the property in the father as lessor, and predicates the right to recover on the theory that the son, by virtue of his possession, had the right to transfer to the plaintiffs the absolute and complete title to the property, discharged of any right or claim of the father thereto, as such lessor. Certainly, the son had no authority to make such transfer by virtue of such lease.

Counsel for the plaintiffs contend that the father is estopped by his conduct from claiming the property, independent of the lease. Certainly, the father, as lessor, lost

none of his rights by merely allowing his son, as lessee, to go into possession; otherwise, any lessor of chattels would be in danger of losing his property. One of the objects of every lease is to secure possession to the lessee.

The only other matter calling for consideration is the fact that at the time the father, through the agency of his daughter, Mary, bought and paid for the furniture and goods to be placed in the hotel and to be leased to the son, the son was present and selected the same. The good faith and genuineness of the whole transaction, so far as the father is concerned, are abundantly established by the evidence and findings of the court. The mere fact that such purchase was made by the father just before giving the lease gave the son no more right to dispose of the property than if the father had owned the property for months or years prior to giving the lease. The father neither said nor did anything to mislead the plaintiffs or either of them, or to induce them or either of them to give credit to the son. The case is entirely unlike one where the person in possession of chattels or goods is clothed with the apparent authority to sell and give an absolute title to the property. We must hold that such mere presence of, and selection by, the son, at the time of the purchase, and his subsequent possession of the property so purchased, under and by virtue of the lease, did not estop the father, as lessor, from claiming the property, as against the son's subsequent creditors and mortgagees. We fully recognize the equitable rule invoked by counsel for the plaintiffs, to the effect that he who has been silent as to his alleged rights when he ought, in good faith, to have spoken, shall not be heard to speak when he ought to be silent. That doctrine, however, always presupposes mistake or error on the one side, and fault, deceit, or fraud upon the other, and some defect of which it would be inequitable for the party against whom the doctrine is asserted to take advantage. In the case at

bar, it does not appear that the father was ever silent as to his alleged rights when he ought, in good faith, to have spoken. *Morgan v. Pierron*, 64 Wis. 523; *Walker v. Grand Rapids F. M. Co.* 70 Wis. 92. In *Johnson v. Crofoot*, 53 Barb. 574, seemingly relied upon by counsel, the property in controversy belonged to the lessee, and the only claim the lessor's assignee had to the same was by virtue of a clause in the lease in the nature of a chattel mortgage; and it was held that as the lease was never filed as a chattel mortgage, as required by the statute, he had thereby lost his security, as against an execution creditor of the lessee. Of course, a lessee may sell or incumber his own property. *Colville v. Miles*, 127 N. Y. 159.

*By the Court.*— The judgment of the circuit court is affirmed.