WARD, J.
(dissenting). — This action was commenced in justice’s court in the county of Monroe, hy the plaintiff (the appellant), to recover a quantity of wheat straw, and the complaint set forth a cause of action for the recovery of the same, and for damages for the detention thereof. The answer d enied the plaintiff’s complaint, and alleged that on the 29th of ¡November, 1893, one Howard Carmel, being the owner of the growing crop of wheat situate on the premises of the plaintiff leased hy Carmel, executed and delivered to the Milson Rendering & Fertilizing Company a chattel mortgage on the growing crop of wheat, to secure a debt due the company of $55.50; that Carmel had never paid the debt, and, when the wheat became ripe and ready to *473 harvest, Carmel refusing to harvest it, the defendant harvested the wheat, and took possession thereof, as the agent of the company, and was entitled to the possession thereof, by virtue of such chattel mortgage, and demanded a judgment for a return of the property, with damages for its detention. It appeared in evidence that the plaintiff had leased his farm by a' written lease for a year, from the 1st day of April, 1893, for a cash rental of $250, to said Howard Carmel. The lease provided that all grain grown on said farm should be hauled to the barn, and threshed there, and the straw stacked in good order. In the summer of 1894, when the wheat was ready to cut, the defendant, as the agent of the mortgagee, harvested the wheat, there being about eight acres of it, and drew it (including the straw) to a barn on another farm near by, claiming to own it under the chattel mortgage, which had become flue. The plaintiff demanded of the defendant that he return the wheat to the bam on the premises, which the defendant refused to do; and while the straw, including the wheat unthreshed, was thus in the defendant’s possession, it was taken by the plaintiff by proceedings in replevin in justice’s court, and delivered to the plaintiff. The justice rendered a judgment awarding the possession of the property to the plaintiff, with costs. The defendant appealed to the county court of Monroe county, where a new trial was had before the court, without a jury; and •the county court held that the defendant was entitled to the possession of the property until the wheat was threshed, and gave-judgment for the defendant. The county court found as a fact that the plaintiff was the owner of the straw; that, by the lease in question, the tenant, from whom the mortgagee derived its title, owned the wheat in the straw, with the right to harvest it, and thresh it on the plaintiff’s premises; and that there was sufficient room in the barn of the plaintiff on those premises to store’ and thresh the grain. These facts are supported by the evidence. It was uncontradicted in the case that the defendant persisted in ■taking the straw, including the wheat, off the premises of the plaintiff, notwithstanding that he was told by a member of the plaintiff’s family that, under the lease, he had no right to do so. The defendant in no manner stated or claimed that he was simply taking the straw off to a neighboring barn to thresh the wheat, and return the straw after such threshing, but insisted on a full ownership under the mortgage, which covered the straw as well as the wheat. The plaintiff had the right under these -circumstances to treat the defendant as a wrongdoer, who claimed the straw, and had converted it to his own use, and to replevy the straw; and if, as an incident to the straw, or as contained in it, the wheat not having been senarated by the defendant from the straw when and where the defendant had the right to separate it, the defendant could not complain. The plaintiff had the right to have the straw threshed upon his own land, where he could lave the benefit of the whole of it and the chaff that came there *474 from for the uses of his farm. This could not he fully secured if the wheat was threshed elsewhere. The fact that the defendant removed this straw from the plaintiff’s premises when it was not necessary, for the purpose of threshing or storing the wheat, claiming title under the mortgage, indicated the defendant’s intention to convert .to his own use the property in controversy; and' the plaintiff was not bound to wait until the straw was beyond his reach, or bring his action for damages. He could seize the property itself, as ho did, to await the determination of the action.
The learned county judge favored us with an opinion in which he ably presents the view taken by the county court in the matter, and cites Colville v. Miles, 127 N. Y. 159; 38 St. Rep. 132, and Hawkins v. Giles, 45 Hun, 318; 12 St. Rep. 426. Where the tenant has agreed to feed out certain farm produce to the stock upon the farm, creditors of the tenant levied ¿apon this produce, and it was held that, notwithstanding the contract between 'the tenant and his landlord that the produce was to be fed out on the farm, still such produce, being the property of the execution debtor, could be taken by the creditor on execution. The difference between those cases and the one before us is manifest, inasmuch as here the straw was the property of the landlord, and not of the tenant.
We have reached the conclusion that the judgment should be reversed, and anew trial granted, with costs to abide the event.
The following is the opinion of the lower court (Sutherland, J.):
This is an action of replevin, in which the plaintiff obtained a writ in justice’s court requiring the constable to whom the writ was delivered to take into his possession certain unthreshed wheat •straw, which the defendant, as agent for the Milson Rendering & Fertilizing Company, had cut and harvested upon the farm of the plaintiff, and had caused to be drawn to a barn on an adjoining farm, for the purpose of having the grain threshed. As soon as the wheat was put in the bam, men were engaged to thresh it; but, before an opportunity was given the defendant to thresh the grain, it was taken under the writ of replevin, and this action was commenced. The justice awarded judgment for the plaintiff, giving him possession of the property in question; and, the defendant having appealed, the case was retried in this court.
The plaintiff leased his farm in the town of Ogden to one Howard Carmel. Hnder the lease, the tenancy of Carmel began April 1, 1893, and was to expire March 31, 1894, unless it was renewed by mutual consent for a further term. Carmel occupied the premises during the said term, and left the premises at the termination of the first year. When Carmel rented the said farm, there was growing thereon some wheat, which had been sown by the former tenant in the fall of 1892. Carmel left growing upon the farm eight acres of wheat, which he had sown in the fall of 1893, which became ready for harvesting the last *475 of July, 1894, at which time the farm was in the possession of another tenant. The Carmel lease required the tenant “to feed all straw and coarse fodder grown on said farm to some stock, so as to make it into manure, and to haul out and properly distribute all the manure made on said farm.” The lease further provides as follows: “But, if his convenience require it, he may haul any such loose fodder or hay to the bam on the opposite side of the road where he lives, provided he shall draw the manure made from the same back to the place where the fodder was grown. The wheat now growing on said farm is reserved, with the right to the previous tenant to go upon said premises, and cut, harvest, and thresh the same, with barn room to properly house and care for the same; but the present tenant (Carmel) shall have the right to leave as much wheat growing on said farm at the termination of his tenancy, with like rights to harvest, thresh, house, and care for the same, including in each ease storage in the granary until said grain can be conveniently moved. * * * All grain grown on said farm shall be hauled to the bam, and threshed there, and the straw stacked in good order; and the tenant may use the straw from the wheat now growing on said farm. He shall claim no right to the straw from the wheat growing on said farm after the termination of this lease, and after he leaves the place.” The defendant, as agent of the Milson Rendering <& Fertilizing Company, sold Carmel fertilizers in the summer of 1893, and the amount of Carmel’s indebtedness therefor amounted to $55.50, all of which having become due, Carmel gave to the company a chattel mortgage covering said eight acres of growing wheat, in which chattel mortgage Carmel represented that he was the true and lawful owner of said crop, and had the right to mortgage the same. This chattel mortgage was at once filed in the office of the town clerk. In July, 1894, when the wheat was ready to harvest, Carmel told the defendant, as agent for said company, to harvest said "crop, and thresh the same, under which instruction defendant did go upon plaintiff’s farm, and cut the grain, and caused it to be drawn to the barn on a farm adjoining plaintiff’s premises, for the purpose of having it threshed. Before the day appointed for threshing the grain arrived, Mr, Bringham, who acted as agent for the plaintiff, came to the defendant, and demanded the immediate return of the wheat to the Osman farm. With this demand the defendant declined to comply; and this action was immediately commenced, and the unthreshed grain was taken from the possession of the defendant under the writ of replevin.
The defendant says that he had no knowledge of the provisions of the lease requiring the grain to be threshed upon the Osman farm until he received such information during the progress of the trial of this case before the justice. It does not appear that the demand made upon him by Mr. Brigham was accompanied by any assurance that the defendant could thresh the wheat and take away the grain. The demand was unqualified, *476 and required the immediate return of both the grain and the straw. There is some evidence that, before this demand was made upon him, the defendant contemplated selling the straw after the wheat was threshed; but the defendant says he had no knowledge of the provisions of the lease under which the title to the straw was to remain in the owner of the land. The defendant then might have been- acting under the assurance given him in the chattel mortgage that the tenant had the right to mortgage the entire crop. When the plaintiff commenced this action, he insisted that the defendant had no right to the possession of the unthreshed straw, and he alleges in his complaint that the defendant never had the right to the possession thereof; and, in the affidavit on which the writ was issued, the plaintiff says, that he does not know under what claim the defendant withheld the property from the plaintiff’s possession. It is very clear that, under the lease, the title to the straw always remained in the plaintiff, and that Oarmel had no right to mortgage the straw. He did have the right to mortgage the grain, and to cut, harvest, and thresh the crop, for the purpose of separating the gr'ain from the straw, and that right passed to the defendant’s company under the mortgage. For the purpose of threshing the wheat, the defendant was rightfully in possession of the unthreshed straw at the time of the commencement of this action. If the crop had remained upon the Osman farm, and had been there threshed, it still would have been in the possession of the defendant during that process. All that the plaintiff could insist on was that every particle of straw and chaff should remain upon his place, and be properly stacked; but after the grain was cut, and until it. was threshed, the defendant had the right to the possession thereof. In order to maintain replevin, it is absolutely essential that the plaintiff should have, at the time of the commencement of the action, a right to the exclusive and immediate possession of the chattels in suit. Wood v. Orser, 25 N. Y. 348. This, right the plaintiff did not have at the time the actionjvas commenced.
It is urged that, inasmuch as the lease required the grain to be threshed on the Osman farm, the plaintiff could replevin the crop in order to get it back upon his own farm from the place to which it had been taken. This claim, however, we do not think tenable, The defendant would have had the right, to the possession of the crop if it were on the Osman farm, for the purpose of having it threshed. The plaintiff, in his complaint, seems to have denied the right of the defendant to the possession of’ the unthreshed crop on the Osman farm, as well as elsewhere. In short, the plaintiff has invoked this remedy, not merely to obtain the removal of the crop from the barn where the defendant stored it back to his own premises, but also to obtain for himself the exclusive and continued possession thereof. It is true that nlaintiff claimed not the grain itself, but the straw; but this case turns on the right of possession at the time the suit *477 .was commenced. Because the defendant may have claimed more rights in the entire crop than he was entitled to before he had actual knowledge of the provisions of the lease does not give the plaintiff the right to maintain this action; and the plaintiff himself has weakened his position by insisting upon more than he is entitled to. Hudson v. Swan, 83 N. Y. 552.
We do not think the fact that the lease was not filed in the town clerk’s office is of any importance. The reservation of the straw was not to secure the payment of any indebtedness from the tenant to the landlord, and cannot be considered as a chattel mortgage. But our conclusion is that, because the defendant had the right to the temporary possession of the whole wheat crop at the time the action was commenced, the plaintiff was not entitled to the remedy.
How far defendant’s right to the temporary possession of the crop is affected by the provision in the lease that the grain should be threshed upon the Osman farm is an interesting question. In Hawkins v. Giles, 45 Hun, 318; 12 St. Rep. 426, where there was a provision under which the tenant agreed to pay cash rent for a farm, and to feed out, on the farm, all fodder raised, it was held that the owner of the farm could not prevent the removal of the hay raised by" the tenant, on an execution against the tenant. In Colville v. Miles, 127 N. Y. 159; 38 St. Rep. 132, a farm was leased for dairy purposes, and the tenant agreed to take charge of certain live stock in which he and his landlord had a joint interest, and to raise food enough on the farm to winter the stock, and to feed it out on the place, and, if enough was not raised for that purpose, to buy what was necessary. The defendant levied on some hay raised upon the farm while the tenant was in occupation, under a warrant of attachment against the tenant. It appeared that sufficient food was not raised upon the farm to winter the stock. The owner of the farm brought an action of replevin to obtain possession of the hay so levied upon. But the court of appeals held that the title to the farm products was in the tenant, not in the landlord, and that plaintiff was not entitled to an action of replevin notwithstanding the covenant in the lease that the hay should be fed out on the farm, and the manure left upon the place. In each of the cases cited, Hawkins v. Giles and Colville v. Miles, the title to the crop was held to be in the tenant. In that respect those cases differ from "the case at bar. But the cases are similar to this one in that in each case there was a covenant on the part of the tenant that tho fodder and hay should remain upon the leased premises, to be there consumed. The court in each instance held that the covenant did not affect the right of the creditors of the tenant to levy upon the hay and fodder, and remove it from the farm. The court of appeals say, in the Colville Case, that the agreement to- feed the hay upon the farm did not amount to a reservation of the title, but was an executory contract, for the violation of .which the landlord could have -recovered damages. The court *478 necessarily must have concluded that the conceded right of the plaintiff to have the hay fed out on the farm could not he enforced by a writ of replevin.
In the case at bar the title to the wheat straw was in the plain.tiff; but the right to the temporary possession of the wheat straw, until the grain was threshed, was in the defendant. The only act done by the defendant of which the plaintiff can now complain is the removal of the unthreshed crop from the plaintiff’s farm to the adjoining farm. We think the case of Colville v. Miles is authority for the proposition that the plaintiff was not entitled to invoke the remedy of an action in replevin to enforce the covenant in the lease against the removal of the crop from the plaintiff’s premises. We do not say that the plaintiff has not a right of action for damages for the removal; and if, after the grain had been threshed, the defendant had refused to deliver possession of the straw to the plaintiff, there'can be no doubt that the plaintiff would have had the right to replevin the straw, or to sue for its conversion. Until the grain was threshed, all the plaintiff could ask was that the crop should remain upon the premises. Had it remained there, it would have been rightfully in the possession of the defendant. Had it been taken back from the adjoining farm to the barn of the plaintiff, the defendant would still have had the right to the possession of the crop until it was threshed. But the plaintiff’s right to maintain an action in replevin must be, based upon his right to the immediate, exclusive, and continued possession of the property at the time of the commencement of the action, which right, in our opinion, the plaintiff did not then have.
Appeal from a judgment in favor of plaintiff.