[Filed March 19, 1890.]

THE STATE, ex rel. G. W. HEATH, Respondent, *v.* THEODORE KRAFT, Appellant.

Municipal Corporation—Failure to Qualify—Vacancy.—Sections 24 and 27 of the charter of the city of Albina (Session Acts, 1889, pp. 240, 241), when construed together, require a person elected as councilman of the city to qualify on or before

the first Monday in July next after his election, and a failure to do so may work a forfeiture of his office; but forfeitures are never favored, and before such forfeiture could be claimed or enforced by the city, its officers must have performed all the duties imposed by the charter in relation to such election and qualification; *held*, *further*, in case of a tie vote for councilman on the face of the return, the duty to qualify does not arise until the result of the election shall be finally determined in some mode provided by law.

ELECTION—TIE—ILLEGAL VOTES.—When on the face of the returns of an election for councilman of the city of Albina two candidates had an equal number of votes, if such votes were all legal, there was a tie and no election; but if illegal votes were cast for both or either of the candidates the election was not thereby vitiated, but the true result could only be known by deducting the illegal votes, and in such case the person elected is not bound to anticipate the result of an investigation by taking the official oath before it could be ascertained whether he was elected or not.

MUNICIPAL ELECTION—POWER OF COUNCIL—CUMULATIVE REMEDY.—Where the charter of a municipal corporation makes the common council the judges of election and qualification of its members, but not the *final or exclusive* judges, the jurisdiction of the courts remains, and the remedy conferred on the council is circumulative. But *quere:* Is not such legislation prohibited in the State by Art. VII, Section 9, of the Constitution?

BALLOT—SECRECY—EVIDENCE.—The secrecy of the ballot is for the lawful voter only and not for the spurious. The public policy involved does not extend to the voter who has voted illegally. He may be required to disclose for whom he voted; and in any case the exemption from obligation to disclose the character of his vote can be claimed only by the voter himself. If, when the question is put to him as a witness, he sees fit to answer it, there is no objection to his testimony.

HARMLESS ERROR.—Where the trial court erred in the admission of evidence, and the appellate court can clearly see that it was impossible for such evidence to have injured the appellant, the judgment will not be reversed.

APPEAL from the circuit court of Multnomah county.

The object of this proceeding is to try the title to the office of councilman to the city of Albina, in Multnomah county.

The complaint, in substance, alleges that on the nineteenth day of June, A. D. 1889, a general election was duly held for councilman in each of the wards of the city of Albina, to elect one councilman for the term of one year, and one councilman for the term of two years. That at said election the relator, Geo. W. Heath, and the said defendant were candidates for the office of councilman for the term of one year in the second ward of said city. That at said election the relator received the greater number of votes for said office in said ward, and was thereby duly elected to be a member of the common council of said city for the period of one year from the first day of July, 1889. That on the said last-named day the defendant usurped

said office of councilman, and has ever since continued to withhold the same from the relator.

The defendant's answer, after denying the material allegations of the complaint, alleges as a further and separate defense that the said Geo. W. Heath did not, by the first Monday in July next after his alleged election to the office of councilman for the term of one year in the second ward of said city of Albina, nor at any time, qualify therefor by either taking or filing with the police judge of said city any oath of office; whereby he was and should have been deemed to have declined said office, and did decline such office, and that there was a vacancy therein.

For another and separate answer the defendant alleges that on the first day of July, 1889, there was a vacancy in the office of member of the common council of the city of Albina, from the second ward of said city, for the term of one year, commencing on said first day of July, upon a failure of the voters of said ward to elect an incumbent for said office, at the general election held in said city on the third Monday in June, 1889; and also by the failure of any person elected to said office to qualify therefor as required by law; and thereupon on said first day of July 1889, the defendant was duly appointed by the common council of said city to fill said office, from said last-named date until the first Monday in July, 1890; and thereupon the defendant, within five days thereafter, to-wit: on the second day of July, 1889, duly qualified for said office by taking and filing with the police judge of said city the oath of office, by law in such case required, and then entered upon and has ever since continued in the discharge of the duties of said office to which he was so appointed.

By the reply it appears that the relator and defendant were both candidates for said office at said general election, and that the judges and clerks of said election, wrongfully and contrary to the fact, certified and returned that the relator and the defendant had each received an equal and the highest number of votes cast for councilman in said ward, and that there was no election.   That there-

after and within the time for qualifying for said office, the
relator appeared before the police judge of said city of
Albina and offered to qualify by taking and filing the
requisite oath of office, but said police judge wrongfully
refused to permit said relator to take and file said oath or
to qualify.   The new matter in the answer is denied by
the reply.

A trial resulted in a judgment of *ouster* against the
defendant from which he has appealed to this court.

*P. L. Willis,* for Appellant.

*Henry E. McGinn,* District Attorney, and *Paul R. Deady,*
for Respondent.

STRAHAN, J.—Several questions were presented by
counsel for the appellant which will be separately noticed.
Counsel for appellant argue that the relator having failed
to take and file his oath of office with the recorder on or be-
fore the first Monday in July next after his election, forfeited
his office if he were otherwise entitled to it, and created a
vacancy which the common council was entitled to fill by
appointment.   It being substantially admitted on the
record that the relator did not so qualify, if this contention
can be sustained, it must reverse the judgment and termi-
nate this case.   Section 24 of the Act incorporating the
city of Albina provides (Session Acts 1889, p. 240):  "The
term of office of every person elected to office under this
Act shall commence on the first Monday in July next after
his election, and terminate accordingly, except as other-
wise provided in this Act; and by such time such person
must qualify therefor by taking and filing with the police
judge the oath of office, or he shall be deemed to have
declined and the office considered vacant."   Section 25
prescribes the form of the oath.   Section 27 relates to
vacancies in office, but does not declare a failure to qualify
within the time specified shall create a vacancy; but sec-
tion 28 declares:  "A vacancy in any office caused by the
failure of any person elected to qualify therefor, as pre-
scribed in section 24, or made by or consequent upon the

judgment of any court, or consequent upon the failure to elect, or in any of the cases specified in section 27, must be filled as follows:" And then follows a statement of how vacancies shall be filled. Construing sections 24 and 28 together, it was the manifest intention of the legislature to declare a forfeiture in case the officer elected failed to qualify within the time prescribed by section 24; but forfeitures are never favored, and before such forfeiture could be claimed or enforced by the city, its officers must have performed all the duties imposed upon them by the charter, and when the relator applied to the police judge to take and file the proper oath of office before him, that officer was bound to discharge the duty of administering such oath and filing the same in his office. It is doubtless true the oath might be taken before any officer authorized to administer oaths, but it could not be filed elsewhere than with the police judge.

If the construction contended for is sound, the police judge might cause a forfeiture of any office in the city by simply locking up his office and disappearing from the city during the day or time such oath must be filed, thus rendering it impossible to comply with the charter within the time limited. It is claimed that his refusal to administer and file the oath of office within the time has the same effect. It was in effect suggested that the consequences might have been avoided by the relator by going before some other officer and taking the oath of office and then offering to file the same with the police judge.

Still another objection to the appellant's contention: Sections 19 and 20 of the charter provide a canvassing board for the city, whose duty it was to certify the result of the election, and by that certificate it appeared that each of them received 53 votes. If these votes were all legal, there was no election; but if illegal votes were cast on either or both sides, the election was not thereby vitiated, but the true result could only be known by deducting the illegal votes in each or either case. In such event I do not think that the person elected was bound to

anticipate the result of an investigation by taking the official oath before it could be ascertained whether he was elected or not.    In such case I have no doubt the qualification might be postponed until after the result of the election was ascertained in some one of the ways provided by law.

2.    This brings us to another question necessary to be considered.    Section 22 of the charter is as follows:  "A certificate of election is primary evidence of the facts therein stated, but the council is the judge of the qualifications of mayor and of its own members, and in case of a contest between two persons claiming to be elected thereto must determine the same, subject, however, to the review of any court of competent jurisdiction."

Counsel for appellant insisted that this section vested the jurisdiction now invoked in this case in the common council in the first instance, and that the court could only *review* the action of the council.

It must be observed.that this charter does not vest the council with *exclusive* or final jurisdiction over the subject. If it did, the case would be governed by *Simon* v. *Common Council of Portland*, 9 Or. 437.    But here the council is simply vested with jurisdiction which is neither *final* nor *exclusive*, with the power of review in the courts.    That power would have existed in the courts without the saving clause in the charter.    Where the remedy given before the council is not made *final* nor *exclusive*, it must be regarded as merely cumulative, leaving the jurisdiction already vested in the courts under the general statutes, unaffected. And this view of the law is fully supported by *The People ex rel. Hatzel* v. *Hall*, 80 N. Y. 117.    But is not the legislature restrained by article VII, section 9, of the constitution from divesting the jurisdiction of the circuit courts over any inferior court, officer or tribunal?

3.    Upon the trial in the court below, the State introduced evidence tending to prove that Dawson, Roonick, Glover, Sealy, and Shriver voted at said election for councilman, and that they were not legal voters.    They

were then severally called and questioned as to for whom
they voted, and several of them testified that they voted
for Kraft, to which evidence the defendant objected and
duly saved proper exceptions.    This presents a new ques-
tion in this State and one that is conceded to be important.
There can be no doubt that one important object of the sys-
tem of voting by ballot is secrecy, so that the voter may
freely exercise his choice, uninfluenced by power, station, or
the conditions by which he is surrounded, but this protection
extends to the lawful voter only and not to the spurious.
It is the lawful voter around whom the law throws its pro-
tection and not to him who assumes to exercise the sacred
prerogative of a voter without being duly qualified.
McCrary on Elections, section 297, states the rule thus:
"It is very clear that the rule, which, upon grounds of
public policy, protects the legal voter against being com-
pelled to disclose for whom he voted, does not protect a
voter who has voted illegally from making such disclos-
ures.    To give to that rule this wide scope would be to
make it shield alike the right and the wrong, the honest
and the dishonest.    It was intended to protect the
inviolable secrecy of an honest ballot, and thus the purity
of the ballot box.    It was not intended to be used in aid of
the schemes of corrupt men to defeat the will of the
people.    It follows that having proven that A. voted at
the election in question, and that he was not a legal voter,
he may be required to testify as to the person or persons
for whom he voted."    This authority would seem to
effectually dispose of this exception, but there remains
another answer equally as conclusive and satisfactory.
The exemption from obligation to disclose the character of
his vote can be claimed only by the voter himself, and the
question can therefore be put to the witness, and if he sees
fit to answer there is no objection to the testimony.
Paine on Elections, section 766.

If the ballots that were offered in evidence had been in-
troduced for the purpose of overturning an official count,
then clearly the plaintiff did not identify them or show

their careful preservation, so as to entitle them to be introduced in evidence. *Fenton* v. *Scott*, 17 Or. 189. And I am strongly disposed to think that there was not enough shown to introduce them for any purpose; but they in no manner affected the result to the detriment of the defendant; on the contrary, he appears to have gained one vote by their introduction. In such case the error, if error it was, was harmless. We can clearly see that the party complaining was not and could not have been prejudiced by the introduction of the improper evidence. We do not, therefore, feel called upon to reverse the judgment for that reason.

These were all of the questions made in this court, and their examination requires an affirmance of the judgment appealed from.