Decided at PENDLETON, 13 August, 1898.

**TOWNLEY *v.* OREGON RAILROAD COMPANY.**

[54 Pac. 150]

INJURIES TO PREMISES — RIGHTS OF LESSEE.—A lessee in possession of property which is destroyed through another's negligence may recover the value of its use for the unexpired term of the lease.

COMPETENCY OF OPINION EVIDENCE.—Plaintiff in an action for property injured and destroyed by defendant's negligence cannot, without laying the foundation therefor by showing that he is possessed of sufficient knowledge

to form an intelligent estimate, give his opinion as to the value of the different articles of property injured and destroyed: *Oregon Pottery Company* v. *Kern*, 30 Oregon, 328, followed.

APPEAL—HARMLESS ERROR.—Error in admitting incompetent evidence as to the value of articles injured or destroyed by fire set by defendant's negligence cannot be regarded as harmless because competent evidence was subsequently given as to the value of some of such articles, where the verdict is for a gross sum. In such a case there is no means of telling whether the competent or incompetent evidence decided the jury: *Krewson* v. *Purdom*, 15 Or. 589, and *State ex rel.* v. *Kraft*, 18 Or. 550, distinguished.

From Union : ROBERT EAKIN, Judge.

Action by W. J. Townley, as a trustee, against the Oregon Railroad & Navigation Co. for damages, and from it the defendant appeals.

REVERSED.

For appellant there was a brief over the names of *Joel M. Long* and *Thos. H. Crawford*, with an oral argument by *Mr. Long*.

For respondent there was a brief over the names of *Chamberlain & Thomas* and *J. M. Carroll*, with an oral argument by *Mr. George E. Chamberlain*.

MR. JUSTICE BEAN delivered the opinion.

This is an appeal from a judgment of the circuit court of Union County, given in favor of the plaintiff, in an action brought to recover damages for injuries alleged to have resulted from defendant's negligence in burning grass and other combustible material on or near its right of way. The complaint is : That on October 9, 1896, the plaintiff was entitled to and in the possession, as the trustee of an express trust for and on behalf of James Raymond, of a 3,500-acre tract of land adjoining the defendant's right of way in Union County, together with all the personal property kept and used upon such premises, including 21½ tons of hay, a Randolph header, and an Os-

borne binder; that 720 acres of said land is what is commonly known as turf or peat land, of a combustible character, and easily ignited when dry, and 700 acres thereof was, at the time referred to, covered with a heavy growth of grass, and 15 acres with ripe standing grain; that on the day named the servants and employees of the defendant carelessly and negligently set out and caused to be set out fire along that part of defendants right of way contiguous to plaintiff's land, and so carelessly managed the same that such fire burned up and destroyed about 5 acres of grass, and on the following day negligently and carelessly suffered and permitted such fire to escape from their control, and burn up and destroy about 700 acres of grass, of the value of $1,051; 15 acres of grain, valued at $120; 21½ tons of hay, valued at $107.50; 1 header, of the value of $150; and 1 binder, of the value of $100. The defendant by its answer, denies all the material allegations of the complaint, and for an affirmative defense alleges that whatever damage was done to the plaintiff was caused by a fire set by himself and employees on the 8th of October, 1896, and by them negligently and carelessly allowed to spread over his premises. The evidence discloses that on May 6, 1896, one James Raymond, who was in possession of the tract in question under a lease expiring on the 23d of the following December, and the owner of the personal property described in the complaint, transferred by an instrument in writing his leasehold interest and such personal property to the plaintiff, in trust to secure the payment of a certain promissory note for $6,000, signed by himself and the plaintiff. By the terms of such instrument the plaintiff was to take and retain possession of the personal property and the leased premises, use and control the same, harvest and sell the growing crop to the best advantage, and out of the proceeds pay the expenses of his trust,

and satisfy such note, and the overplus, if any, pay over to Raymond. Immediately upon the execution of the instrument the plaintiff claims to have gone into the possession and control of the property described therein as such trustee, and to have been so in possession at the time of the grievance complained of.

A few days before the time alleged in the complaint, he caused to be plowed two parallel strips of land a rod wide and about twenty feet apart along and parallel to the defendant's track as a firebreak, to prevent such fires as might be caused by defendant's engines from overrunning his land. At this time that section of country was dry, and the land in possession of plaintiff adjoining the right of way, being dry, peaty soil, covered with grass and weeds, was very susceptible to fire. Notwithstanding these conditions, the section hands of defendant, on the ninth of October, set fire to the grass, weeds, and other combustible material on the strip of land between the two firebreaks referred to for the purpose of burning the same off, and by this means to lessen the danger of accidental fires set by its engines escaping onto the adjoining land. They began their work at the south line of the premises in question, and proceeded north, keeping the fire under control until they reached the wagon road, when it escaped over and across the road, and commenced burning in the grass and weeds on the plaintiff's land north thereof. About this time plaintiff's foreman, fearing that the fire had got beyond control of the defendant's servants, rode out to where it was burning, and after consultation with them it was thought advisable to have a firebreak plowed between the fire and the land in plaintiff's possession to prevent the further progress of the fire. In pursuance of this understanding, the foreman directed one of the employees on the ranch to plow a strip of land from the

wagon road northerly to a creek some two hundred feet
distant, which was done accordingly. After this the
section men and plaintiff's servants extinguished all the
fire then visible, and some time in the afternoon or even-
ing left the premises, believing, as the defendant claims,
that there was no further danger, and that the fire was
practically extinguished. The evidence tends to show,
however, that the fire was still alive and smoldering in
the turf and dry peatish soil, and on the next morning
was fanned into a flame by the wind, and, escaping over
the firebreak plowed the day before, ran over some seven
hundred acres of said tract, consuming the grass and
other growth thereon, burning the hay, and damaging
the header and binder.

The record contains some seventy-one assignments of
error, but those upon which defendant seeks to secure
the reversal of the case may be summarized as follows :
(1) In admitting evidence as to plaintiff's title and right
to the possession of the premises burned over, and in
refusing to direct the jury not to consider as an item of
damage in the case any injury to the grass and pasture
land ; (2) in permitting the plaintiff to give his opinion
as to the value of the property destroyed, without any
foundation having been laid therefor; (3) in allowing
plaintiff to testify as to conversations between himself
and McCarty, the defendant's section foreman, before
the fire in question was set out, about burning off the
right of way ; (4) in refusing to give certain instructions
requested by the defendant.

1. Upon the first point the contention is that the court
erred in admitting as evidence the lease under which
Raymond held possession of the premises, and the instru-
ment assigning his interest thereunder to the plaintiff,
and in refusing to instruct the jury that plaintiff could

not recover for the grass and pasture destroyed by the fire, for the reason that such damages inure to the freehold, and the plaintiff had failed to prove that Raymond's lessor had title to the land, or authority to make the lease in question. It has been held that the title necessary to maintain an action of this character is the same as in an action of trespass *quare clausum fregit*, and hence a person who is in the actual possession and occupancy of land may recover for damages done to the land itself by fire, caused by the negligence of a railway company in operating its road, without proof of a paper title, unless the defendant shows an outstanding adverse title to the land higher than a mere possessory one : *McNarra* v. *Chicago & N. W. Railway Co.*, 41 Wis. 69. But it is unnecessary to invoke this rule in the case at hand, because the court charged the jury that they were not at liberty to consider any damage to the land itself, but only the "value of the use of the pasture of the ground burned over" for the unexpired portion of the lease, and therefore defendant's objection that plaintiff did not show title to the realty is without merit. If he was in possession, claiming the right under a lease which, by its terms, expired in the following December, he clearly had a right to maintain an action against a trespasser for interfering with such possession or the use and enjoyment of the leased premises.

2. It is also claimed that the court erred in allowing the plaintiff to testify as to his opinion of the value of the property destroyed, without showing that he possessed sufficient knowledge on the subject to form an opinion. Upon this point the record discloses that the plaintiff, after describing the property injured and destroyed by the fire, and without any foundation having been laid for the admission of such evidence, or any examination

of the witness to show that he knew anything whatever about the value of machinery, hay, grain, standing wheat, or pasture land, was permitted to give an opinion as to the value of each item of such property destroyed and injured by the fire.    Timely objection was made to the introduction of this evidence on the ground that the witness had not shown himself qualified to give an opinion, and after its introduction the defendant moved to strike out for the same reason, and also requested the court to instruct the jury to disregard it. These objections were all overruled, and this was error. There is no possible ground, so far as we have been able to ascertain, upon which the admissibility of the testimony can be sustained, and none has been suggested by plaintiff's counsel.    The rule is too well settled to be longer open to debate that a witness cannot be permitted to testify to his opinion as to the value of property without first laying a foundation for such testimony by showing that he is possessed of sufficient knowledge upon the subject to form an intelligent opinion :    *Oregon Pottery Co.* v. *Kern,* 30 Or. 328 ( 47 Pac. 917 ); *Haight* v. *Kimbark,* 51 Iowa, 13 ( 50 N. W. 577 ).    No such showing was made or attempted in this case.    Indeed, it does not appear that the witness had any knowledge whatever of the value of the property in question.

3. Counsel for the plaintiff, however, contends that the error in the admission of this evidence was harmless, because witnesses were subsequently called by the defendant who were admittedly competent to testify on the subject of the value of some of the articles destroyed and injured by the fire, and did so testify.    As a general proposition, a judgment will not be reversed on account of the improper admission of testimony if the facts sought to be thus proved were clearly established by

other evidence, so that it can be seen that the party complaining was not prejudiced by the admission of such testimony, and that the verdict must have been the same if it had not been admitted : *Krewson* v. *Purdom*, 15 Or. 589 (16 Pac. 480); *State ex rel.* v. *Kraft*, 18 Or. 550 (23 Pac. 663). But there is no room here for the application of this rule, because the verdict is for a gross sum, made up of sundry items of damages, and there is no way of determining from the record by what evidence the jury were influenced in arriving at their verdict. The repeated rulings of the trial court that plaintiff's testimony was competent, and its refusal to withdraw it from the jury, clearly authorized them to consider it as proper testimony in the case, bearing on the question of damages, and the verdict affords no evidence of the basis upon which the jury arrived at the amount of damages. Under such circumstances the court cannot say that the error was harmless.

From these conclusions it follows that the judgment must be reversed, and as the other questions discussed in the brief and by counsel at the hearing, interesting and important as they are, may not arise on another trial, or, if so, may be presented in a different form, it is thought best not to anticipate them at this time. The judgment is therefore reversed, and the cause remanded for a new trial.

REVERSED.

Decided at PENDLETON, 13 August, 1898.