Argued March 14, affirmed June 25, rehearing denied September 24, 1929.

D. G. BROWN *v.* W. W. JONES ET AL.

(278 Pac. 981.)

428

For appellants there was a brief over the names of *Messrs. Van Fleet & Laughlan* and *Mr. J. H. Carnahan,* with an oral argument by *Mr. E. F. Treadwell.*

For respondent there was a brief over the name of *Messrs. Oneill & Irwin.*

BEAN. J.—By appropriate pleadings and objections and exceptions, defendants contend that plaintiff's lessor is the real party in interest and that plaintiff has no right to maintain the action. It is further contended by defendants that the court erred in permitting the plaintiff to introduce testimony in reference to or recover for any injury to his property other than such value as they possessed for grazing purposes.

■ As to the first proposition: Section 27, Or. L., provides that every action shall be prosecuted in the name of the real party in interest, except as otherwise provided in Section 29, which exception does not apply here.

This raises the question as to who is the real party in interest as to a growing crop of grass upon leased lands. Defendants call our attention among other authorities to 4 Sutherland on Damages (4 ed.), Section 1082, page 4093, where we read as follows:

"The allowance for damages should be confined to such interest in the land as is represented by the parties to the proceeding; if lessees are not parties damages cannot be allowed for injury to the leasehold estate."

On page 4091, Section 1081 of the same volume, we find a tenant may be compensated for the injury to or destruction of growing crops, but not for in-

jury to buildings or improvements on the land when he entered. The law is laid down in 4 Sutherland on Damages (4 ed.), page 3900, Section 1049, as follows:

"The owner of rented land cannot recover for damage done to crops on such part thereof as was held by tenants who had paid the stipulated rent."

The plaintiff, and not the United States, was the proper party to prosecute this action.

The plaintiff being the rightful owner of the crops of grass growing upon said land and in the full peaceable possession of the lands, had a perfect right to cut the grass for hay and thereafter to depasture the land where the grass had been cut. The lease was not made for the benefit of the defendants and they have no right to complain nor object, or take any advantage of the clause in the lease describing the use of the land as for pasturing stock. That is a matter wholly between the lessee and the United States, the lessor.

Neither does the amount of rental paid by plaintiff make any difference as to the value of the grass or hay. The government is not claiming any breach of the lease. On the other hand, Mr. Herbert D. Newell, project manager for the United States, testified for plaintiff, over the objection and exception of the defendants to the effect, that it was immaterial to the United States whether plaintiff depastured the lands or cut the hay and fed it to his cattle.

This testimony tended to show that the United States was not making any objection to the manner in which the plaintiff had used and was using the land. It did not change the terms of the lease. In

any event, the admission of such testimony was not a reversible error. The defendants failed to show any right or title to the leased lands.

■ We hold that the clause in the lease whereby the plaintiff "waives all claims for damages of whatever nature that may arise during the tenancy, due to the presence of the test pits, or other works of the United States upon the land, or from any other cause," relates solely to any work or acts that may be done by the United States, the lessor, and to no one else.

This clause does not confer any right upon defendants to injure plaintiff's crops in the construction of a canal. The authorities cited by the learned counsel, as to the right of a third party to take the benefit of a contract, made for the benefit of such third party relate to contracts made for the benefit of such third party, which is not this case.

■ Defendants plead and contend that the statute of limitations had run against plaintiff's demand, claiming that by virtue of Section 8, Or. L., the action is barred, if not commenced within two years. That section provides for the commencement of an action as follows:

"Within two years,—(1) An action for assault, battery, false imprisonment, for criminal conversation, or for any injury to the person or rights of another, not arising on contract, and not herein especially enumerated; provided, that in an action at law based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit."

Section 6, Or. L., provides for the commencement of an action within six years:

"Within six years, * * (4) An action for taking, detaining, or injuring personal property, including an action for the specific recovery thereof."

We think the case is governed by the latter section of the Code: *Deetz* v. *Cobbs & Mitchell,* 120 Or. 600 (253 Pac. 542).

The question hinges on whether the injury complained of is to real or personal property. It is clear that a tenant has no right generally to take and remove real estate.

Did the lessee have a right to take the grass growing on the rented land? That question is answered in 2 Tiffany, Landlord & Tenant, page 1627 et seq., Section 249, thus:

"In the case of *fructus naturales,* such as trees, growing timber and grass, the right of the tenant under the lease to appropriate such products is restricted by reason of the prohibition of waste, but he may take the periodical products of such permanent plantings, such as the fruits on the trees and bushes, and the crops of grass or hay, since this cannot be regarded as waste. * *

"The tenant being the owner of the annual crops, he has a right to transfer them by way of mortgage or otherwise, and they are subject to levy by his creditors under execution."

See *Turner* v. *Bachelder,* 17 Me. 257; *Dockham* v. *Parker,* 9 Me. (9 Greenl.) 137 (23 Am. Dec. 547); *Orcutt* v. *Moore,* 134 Mass. 48 (45 Am. Rep. 278); *Gulf C. & S. F. Ry. Co.* v. *Smith,* 3 Tex. Civ. App. 483 (23 S. W. 89, 90).

And in *Townley* v. *Oregon Ry. Co.,* 33 Or. 323 (54 Pac. 150), which was an action, *inter alia,* for the destruction by fire of grass and pasture brought by the assignee of a lessee. At page 328 of the Report

(54 Pac. 152), we find the following language of former Mr. Justice BEAN:

"If he (the tenant) was in possession claiming the right under a lease which by its terms expired in the following December, he (the tenant) clearly had a right to maintain an action against a trespasser for interfering with such possession or the use and enjoyment of the leased premises."

Growing and matured crops upon leased lands are personal property: *Anderson-Edwards* v. *Perkins*, 7 Or. 149, at p. 156; 8 R. C. L. 357, and notes; 8 R. C. L. 362; *Estep* v. *Bailey*, 94 Or. 59 (185 Pac. 227); *First Nat. Bank* v. *Beagle*, 52 Kan. 709 (35 Pac. 814, 39 Am. St. Rep. 365, 366); *Adam* v. *Chicago, B. & Q. Ry. Co.*, 139 Mo. App. 204 (122 S. W. 1136); *Emery* v. *Fugina*, 68 Wis. 505 (32 N. W. 236); 36 C. J. 102, § 739.

Defendants cite as their sustaining Oregon case, *Dalton* v. *Kelsey*, 58 Or. 244, 251 (114 Pac. 464), where plaintiff and defendant had an agreement as to the right to water passing over defendant's land in a ditch. Defendant interfered with plaintiff's water on defendant's land but did not enter plaintiff's land. It was held to be an action on case and barred in two years, under Section 8, subdivision 1, Or. L. The case differs in its setting from the case at bar, and is not in point.

In the present case the plaintiff complains that the defendants sent certain waters on to the lands leased by plaintiff and injured his crops. The damage was done on such lands. Plaintiff does not complain because of acts done on lands other than those of which he was in possession, except in so far as the same caused injury to his personal property.

A demurrer to the amended complaint was sustained as to the defendant Meadows Drainage District and it is out of the case.

Plaintiff alleges in paragraph V of his complaint that the other defendants combined together and acting in concert with the intent to acquire a beneficial interest for themselves to drain their lands, theretofore described in the complaint, caused to be built and constructed the large dyked canal. (Describing the same.) Defendant answered the paragraph of the complaint as follows:

"Answering paragraph V of said fourth amended complaint, this defendant Admits that a canal was constructed approximately at the places alleged in the said paragraph, but Denies each and every other matter, allegation or thing in said paragraph V of the said fourth amended complaint contained."

The answers of these defendants were alike. We do not understand that the construction of the canal by these defendants, as averred by plaintiff was intended to be or was denied. Defendants are presumed to know whether they constructed the canal as alleged and if they did not they should have denied the same.

For the same reason that defendants contend the statute of limitations had run, they claim that the defendants could not be joined, "for indirect trespass, or trespass on the case separately committed." Citing among others, 1 Sutherland on Damages (4 ed.), §§ 140, 141. The well-known rule is there announced, thus: "If injuries or damages are sustained through the affirmative acts or negligence of several persons, an action may be brought against all or any of them without prejudicing the plaintiff's

rights." That the test of liability is in the inseparableness of the acts.

We do not think we can improve on the above statement, but see *Strauhal* v. *Asiatic S. S. Co.*, 48 Or. 100, at page 106 (85 Pac. 230), where the established rule is stated, in effect, that where an injury is a result of the concurring acts of two or more persons, although acting separately, either or all are liable and many authorities are cited and quoted: *Peters* v. *Johnson*, 124 Or. 237 (264 Pac. 459). There seems to be not so much controversy in regard to the law, but only in the application thereof.

■ Exception was saved by counsel for defendants to the introduction of plaintiff's evidence, to the effect that he had some thirty-five acres of land in addition to the land leased from the United States which he claimed to have leased from year to year, from the Mercantile Trust Company and which he had been in possession of during the time complained of, which was a part of the land upon which the grass was destroyed. The objection was based upon the invalidity of the lease. Plaintiff had formerly owned and conveyed this land and, as he states, the grantee permitted him to use and occupy the same after the conveyance and during the time for which complaint is made. The point is not well taken. There was no error in admitting such testimony.

Where tenants at sufferance make a parol reservation of a matured crop by agreement with the landlord before they are dispossessed, such reservation operates as a constructive severance and gives the tenants the right of ingress and egress to cut and carry the crop away: *Bristow* v. *Carriger*, 24 Okl. 324 (103 Pac. 596, 25 L. R. A. (N. S.) 451); 39 C. J., p. 102, note.

■ Growing crops on leased lands, crops embraced in chattel mortgages and crops levied upon execution and sold, are usually considered, we think, as constructively, or in legal contemplation, severed from the freehold.

■ Defendants assign error of the court in refusing to give their requested instruction No. 6, to the effect, that the plaintiff's lease from the United States gave an uncertain description of the leased land, which could not be ascertained therefrom. The lease described the lands as follows:

"The south half (S.½) of the northwest quarter (NW.¼) and northeast quarter (NE.¼) of northwest quarter (NW.¼), parts of the northeast quarter (NE.¼) and southwest quarter (SW.¼) of section twenty-five (25) and southeast quarter (SE.¼), northeast quarter (NE.¼) of northeast quarter (NE.¼) of southeast quarter (SE.¼) and part of south half (S.½) of southeast quarter (SE.¼) of section twenty-six (26), all in Township thirty-four (34) South, Range six (6) East, Willamette Meridian, containing approximately 425 acres."

There were maps and plats used upon the trial to show what lands plaintiff was in possession of under his lease and to designate how the land laid with reference to the streams and the canal and the contour of the premises. We see no trouble in this respect. We apprehend that the jury fully understood the matter.

■ Requested instructions numbers 21, 22, 23 and 24 embraced the alleged waiver of plaintiff by the terms of the United States' lease to claims for damages to which we have already alluded. Defendants complain of the giving of instruction No. 9, as ambiguous. It was as follows:

"You are further instructed that should you find from the evidence in this case that said lands in question were not available for pasturage purposes to this plaintiff for the pasturage of livestock during the pasture season of the years 1922, and 1923, caused from being submerged and overflowed with water from the dyked canal constructed by these defendants, or either of them, if you should so find; then you are further instructed that this plaintiff would be entitled to recover damages, if any, for the loss of said pasturage if the same occurred during the months of August, September, October, and November, or either of them, but not to exceed ninety days in either year; said damages to be measured according to the number of acres each year so covered with water, together with the value of the pasture per acre per month, increased by the number of months that said lands could each year have been pastured, but for said submerging and overflowing as aforesaid. But in no event may you award more than three dollars per acre per year for the loss of pasturage, if any you find to have occurred, as that is the maximum amount of damages per acre prayed for in the complaint for loss of pasturage per year."

This part of the charge is not subject to the criticism made. It was not erroneous.

The testimony tended to show and the jury evidently found a verdict from the evidence of the following purport. S. A. Brown, son of plaintiff and civil engineer who swore he was acquainted with the premises involved, testified as follows:

"Now during 1922 and 1923, of the years of which this lawsuit is over, what was the condition of these lands—leased lands—throughout the entire period of those years? A. They were overflowed with water from that canal.

"Q. An average of about how much water was there on these lands? A. From ankle-deep to two

and a half feet,—perhaps from a few inches to two and a half feet deep.''

■ The defendants exhibited a contract between the United States and the California-Oregon Power Company permitting the company to flood and inundate all lands surrounding Upper Klamath Lake up to the physical elevation of 4,143.3 feet above sea-level. Defendants, upon the trial, claimed that the water which submerged plaintiff's leased lands was water from the lake caused by the construction of a dam and the raising of the waters in Upper Klamath Lake, by the California-Oregon Power Company, pursuant to such contract, and the defendants complain of the instruction of the court in regard to such matter.

The examination of the charge of the court to the jury disclosed the jury was informed that in order for plaintiff to recover damages to his hay, or pasture, he must show by competent evidence that his lands were submerged by water sent there by the canal constructed by the defendants acting together.

In regard to the particular point complained of, the court instructed the jury, that if it appears from the evidence that the damage to the wild grass, if any, was caused by the acts of the defendants, and partially by the raising of the waters of the Upper Klamath Lake, the jury was instructed that ''before plaintiff can recover he must prove by a preponderance of the evidence the amount of damage that was caused by the defendants, or either of them, and the defendants, or either of them, can only be held liable for such part of the damages as they caused, if any.'' That if it was impossible to determine, with reasonable certainty what part of the damage was caused by defendants and what was caused by the raising

of the waters of the lake, the jury must find a verdict in favor of defendants. These instructions seem to be plain and apparently were understood by the jury.

Defendants complain because the court did not mention the name of the California-Oregon Power Company and other details. The charge fairly submitted the issues to the jury. The testimony of defendants indicated that water from the lake was raised to an elevation of 4,141 feet in 1922 from January 1st, rose in April and May and went down about July 15th, and was approximately the same height in 1923.

On the other hand, the testimony of plaintiff and his witnesses tended to show that the hay and grass on the lands mentioned were submerged entirely by water from the canal constructed by defendants. This controversial question was one for the jury. They could not have followed the court's instruction and found any damage for plaintiff which was caused in any other manner than by the water from defendants' canal.

Other assignments of error, we think, embrace the same question to which we have referred. Defendants have filed very able and interesting briefs.

Finding no reversible error in the record the judgment of the trial court is affirmed.

AFFIRMED. REHEARING DENIED.

McBRIDE and BELT, JJ., concur.

BROWN, J., took no part in the consideration of this case.