HENRY D. GURNEY *vs.* MINNEAPOLIS & ST. CROIX RAILWAY COMPANY.

July 15, 1889.

New Trial—Eminent Domain—View of Premises—Waiver of Irregularity.—Where, in a "right-of-way" case, the jury is sent out to view the premises, and one of the jurors fails to make the view, but on their return a party, with knowledge of the fact, goes on with the trial without objection, and without bringing the matter to the attention of the court, he waives the irregularity, if any, and cannot, after verdict, raise it as a ground for a new trial.

Same—Misconduct of Prevailing Party.—*Held,* that in this case there was no proof of misconduct on part of the prevailing party to warrant setting aside the verdict.

Appeal by the railway company from an order of the district court for Ramsey county, *Brill, J.*, presiding, granting a new trial in a condemnation proceeding.

*J. D. Springer, F. D. Larrabee,* and *H. S. Abbott,* for appellant.

*Jordan, Penney & Hammond,* for respondent.

MITCHELL, J. Appeal from an order granting a new trial on the grounds of irregularity and misconduct on part of both the jury and prevailing party. It was a "condemnation" or "right-of-way" case, and after the trial had commenced, by agreement of counsel, the jury was directed to go out and view the premises. The alleged irregularity and misconduct occurred during this trip, and was—*First,* that only 11 jurors made the view; *second,* that the railway company improperly attempted to influence the jury by furnishing them a box of cigars.

As to the first, it is sufficient to say that it appears that the respondent and his counsel, who accompanied the jury, knew that only 11 jurors went out to make the view, and yet upon their return they went on with the trial and continued it to verdict, without objection or bringing the matter to the attention of the court. By so doing they waived the objection, and consented to abide the result, and could not afterwards be heard to urge it as a ground for a new trial. A party cannot thus play fast and loose, and speculate on the character of the verdict. If the irregularity be one that can be remedied, as this was, the party affected by it, if he has the opportunity of bringing it to the attention of the court, should do so promptly, and in time to admit of its correction, at least where he can do so without danger of prejudicing himself before the jury in case he is unsuccessful.

2. Two of the affidavits, tending perhaps most strongly to exculpate the railway company from the charge of misconduct, (those of its attorney and seven jurors,) were presented for the first time upon the motion for reargument in the court below, and no excuse was given why they were not presented upon the original hearing. Therefore they ought to be ignored, and this appeal determined upon the affidavits presented on the original motion. These consisted of an affidavit by Gurney himself, that he heard it stated, (by whom he

does not say,) in the presence of the jury and to them, that the cigars were furnished for their benefit by the railway company. Two affidavits of the deputy-sheriff who was in charge of the jury were presented, in one of which he swore that prior to the jury's leaving the court-house to view the premises, the railway company (by whom he does not say) furnished him a box of cigars for distribution among the jurors; that they were so distributed among them, and smoked by them; and that they then and there knew that the cigars were furnished to them by the railway company. In the other affidavit the deputy swore that he himself bought the cigars, and furnished them to the jurors, and Gurney, and the respective counsel; that the counsel for the railway company did not buy or give any cigars to the jury, but, on the contrary, refused to do so. In view, doubtless, of these contradictory affidavits of the deputy, he was brought before the court, and orally examined and cross-examined, and the substance of his testimony was that on this morning, before they started, some of the jurors made some inquiry as to who was going to "set up" the cigars, and that he replied: "Well, I will go and get a box, and I'll run the risk of getting it from the railroad company." That he went and got a box, and distributed them among all who wished to smoke. That five or six weeks afterwards, when he sent to the railway company the bill for the carriages, he included the bill for the cigars, and it was paid. He also testified that it was a common thing for officers in charge of juries to furnish them cigars, and that he did not suppose there was anything unlawful in it; also that on this occasion no one in behalf of the company, or in behalf of any one else, suggested getting the cigars. There is also produced the affidavits of all the jurors to the effect that the deputy-sheriff furnished them with whatever cigars they wished to smoke; that the counsel for the railway company did not offer any cigars to any of them; and that, so far as they knew before the rendition of their verdict, the cigars furnished by the deputy-sheriff were paid for, or to be paid for, by him, upon his own account, and at his own expense. While appreciating the great strictness required in guarding jury trials from improper influences, in order to give parties confidence in the result of their cases, and to teach every one that for any inter-

meddling with jurors a verdict will be set aside, yet we fail to see anything in all of this to indicate that the railway company had anything to do with furnishing the cigars, or that their being furnished could have possibly had any influence on the verdict. The only thing at all connecting the railway company with the matter is the fact that when the deputy sent in his bill they paid it. It is easy to see why they might do this, although not incurred on their orders or at their direction. The most that can be said of this is that it would have been more prudent not to have recognized it. We do not think enough was shown to justify setting aside the verdict on this ground.

From the record before us it appears that the court below set aside the verdict in part, at least, if not mainly, upon the ground of the failure of the juror to make the view, and we infer that the waiver of this by the subsequent conduct of the respondent was not particularly called to the attention of the judge.

Order reversed.

GILFILLAN, C. J. I cannot see any abuse of discretion in the action of the court below, and therefore dissent.