OSMUN v. WINTERS.
(46 Pac. 780.)

1. AMENDMENT OF PLEADINGS—DISCRETION OF COURT.—Where a motion for leave to file an amended answer is called up the day before the time set for a second trial of the case, and the proposed amendment tenders a new issue, it is within the discretion of the court whether or not to allow the motion, and no abuse of such discretion seems to have occurred in this case.

2. BREACH OF PROMISE—EFFECT OF FAILING TO PROVE CHARGES IN ANSWER.—On a trial for breach of a marriage promise, an unproved charge of plaintiff's unchastity, made in the answer, may be considered in connection with all the rest of the evidence in aggravation of damages, as tending to show that defendant was actuated by malice: *Kelly* v. *Highfield*, 15 Or. at page 278, cited and followed.

3. IDEM.—On a trial for breach of a marriage promise, where no proof of defendant's allegations against the character of plaintiff has been offered, it is not error to charge that, where defendant fails to prove such allegations, "it is a worse case than if there had been a simple denial of the contract of marriage, and the action had proceeded on the simple allegations and denials."

4. BREACH OF PROMISE—EVIDENCE.—A resolution of a society to which both the plaintiff and defendant in an action for breach of a promise of marriage were members, congratulating them upon their supposed marriage, and directing a copy thereof to be forwarded to them, is admissible in proof of the promise of marriage, since it tends, though remotely, to show a relationship consistent with the plaintiff's claim of an engagement.

5. EVIDENCE—AGGRAVATION OF DAMAGES.—On a trial for breach of a marriage promise, an article published over defendant's signature, attacking plaintiff's character, and an insulting letter addressed by defendant to plaintiff, both written after the commencement of the action, are admissible as tending to prove the animus of defendant in refusing to perform the marriage contract, and may be considered in aggravation of damages: *Kelly* v. *Highfield*, 15 Or. 290, applied.

6. COMPETENCY OF EVIDENCE OF CO-CONSPIRATOR.—Where it is claimed that a conspiracy existed between certain persons, the statements of one of them touching the conspiracy, not made in the presence or hearing of the others, and not shown to have been authorized by them, are not admissible against the other alleged conspirators: *Sheppard* v. *Yocum*, 10 Or. 402, cited and followed.

7. DISCRETION AS TO CROSS EXAMINATION—CODE, § 837.—Where the cross examination of a party goes to matters outside his examination in chief, but which are pertinent to his adversary's cause, and might have been introduced by him in the first instance, such examination becomes subject to the rules that would govern a direct examination on his own account (Code, § 837), and it is discretionary with the court whether the testimony shall be introduced then and in that manner: *Long* v. *Lander*, 10 Or. at page 178, cited.

8. EVIDENCE—WAIVER OF PROOF.—A stipulation that a letter favorable to the adverse party may be read to the jury upon the condition that a deposition favorable to the stipulating party, but which was objectionable on account of certain irregularities, should also go in evidence, is not an admission that the letter is genuine, but merely dispenses with proof of its genuineness in the first instance.

9. MISCONDUCT OF JURORS—WAIVER OF OBJECTION.—A party who by himself or his attorney is aware of the misconduct of a juror during the trial, and while the cause is yet in the hands of the jury, but does not bring it to the knowledge of the court and ask to have the jury discharged or recast, cannot make it a ground of a motion for a new trial.

10. EXCESSIVE DAMAGES—SPECIFICATION OF ERROR.—The question of excessive damages cannot be raised on appeal unless specified as a ground of error in the notice of appeal.

From Multnomah:  E. D. SHATTUCK, Judge.

Action of damages for breach of a contract of marriage, brought by May Osmun against H. D. Winters.

There was a verdict for plaintiff for $10,500, which was reversed in this court, 25 Or. 260 (35 Pac. 260). On a second trial the jury disagreed, but on a third trial there was a verdict of $9,000, from which this appeal is taken.

AFFIRMED.

For appellant there was a brief over the name of *Watson, Beekman & Watson,* with an oral argument by *Mr. Edward B. Watson.*

For respondent there was a brief over the names of *Flegel & Stanislawsky, McGinn, Sears & Simon,* and *Patrick J. Bannon,* with an oral argument by *Messrs. Alfred F. Sears, Jr.,* and *Austin F. Flegel.*

Opinion by MR. JUSTICE WOLVERTON.

1.   This is an action to recover for breach of a promise of marriage. The facts, sufficient for an understanding of the points decided, appear in the opinion. Error is predicated of the action of the court below in overruling defendant's motion, based upon his affidavit, for leave to file an amended answer, and also in overruling a subsequent motion to strike out certain portions of the original answer. The points of divergence between the original and the proposed amended answer arise in the further and separate defenses interposed. The answer sought to be filed contains a separate defense, in substance the same as the original, except that the allegations of plaintiff's lascivious cohabitation with one Deville Dodge and one W. E. Duffer are eliminated, and a further separate defense alleging the prior marriage of the plaintiff with one Fred Osmun, and a want of knowledge or information sufficient to form a belief as to whether said marriage had been legally dissolved. The cause had been once tried, and the motion was called up the day before the time set for a second

hearing, and, the amendment having tendered a new issue which would require additional evidence to support or overcome, we think it was within the sound discretion of the court below whether or not to allow the motion. Courts are usually liberal in granting leave to amend in furtherance of justice; but, unless it is apparent that justice would be subserved by the amendment, it is not an abuse of discretion to refuse its allowance. The motion to strike out goes simply to the allegations touching plaintiff's conduct with Dodge and Duffer. It appears by the affidavit filed with the first motion that defendant had failed on the former trial to prove these allegations to his satisfaction, and the purpose of the motion to strike out was to get rid, so far as possible, of their damaging effect as false imputations against the character and chastity of plaintiff. The court below, having heard the testimony at the former trial, taken in connection with the affidavit and the conduct of the defendant, was able to judge whether said allegations were made in the first instance in good or bad faith, and upon reasons drawn from these observations we presume the court's action was based. We cannot say that there has been an abuse of discretion in disallowing this motion, and error in this respect is not well assigned.

2. In this connection the court instructed the jury that "The defendant in a case of this kind may allege the bad character and bad conduct of the plaintiff, but he does so always at his peril. What I mean by that is that he may assert it and prove it. He may claim that plaintiff had a bad character and bad reputation, and he may prove it, if he can; but if he fails to prove it, it may be taken as a repetition of the charge of unchastity, and may be considered by the jury in connection with all the rest of the testimony in aggravation of damages. In other words, it is a worse case than if there had been a simple denial

of the contract of marriage, and the action had proceeded on the simple allegations and denials." It is claimed that, besides laying down an erroneous rule of law touching the ascertainment of damages in the action, this instruction was especially injurious to the defendant in view of being held to his former answer. The ruling upon the motion to amend by striking out was but a step in the trial, and, if the court was right in the disallowance of the motion, it was right in instructing the jury touching the effect of the unproved allegations which the motion sought to eliminate. Defendant offered proof of the truth of one of such allegations, but as touching her alleged conduct with Dodge there was no attempt at proof, nor did he claim anything for it in the argument before the jury. This was the condition of the case when it became the duty of the court to instruct the jury, and it was not error to instruct with reference to such condition. Aside from this, the answer contains other allegations imputing immoral conduct to the plaintiff with other men besides Dodge and Duffer, and of her bad character in general. It was, therefore, pertinent to so instruct the jury generally touching the effect and lack of proof of such allegations as matter of defense. Was the instruction proper as it respects the aggravation of damages? An instruction of almost identical import was approved by this court in *Kelly* v. *Highfield,* 15 Or. at page 290 (14 Pac. 744). The ground upon which a false charge of unchastity, assigned as a reason for breaking off the marriage engagement, may be considered in aggravation of damages is that it shows the animus attending the severing of such relations. No damages should be allowed for the defamatory words, but they should be considered as tending to show that the defendant was actuated by malice, that he broke off the engagement wantonly and insolently, and with a bad and wicked heart, and in a manner well calculated to wound

the feelings, injure the reputation, and destroy the future prospects of the affianced. So, if the charge is repeated by spreading it upon the records in the cause after action begun, without justifying it by proof at the trial, it is a proper element for consideration in aggravation of damages, upon like principle as a repetition of slanderous words in the pleadings in an action for slander, unless sustained, may be considered as proof of the malice which prompted the defendant to give currency to the slander in the first instance. The action for breach of promise of marriage, while founded upon contract, is, in its nature, an action for tort or a wrong done the plaintiff; and, if it becomes manifest that the defendant has been actuated by motives of an evil intent to wantonly and ruthlessly humiliate and injure the plaintiff, a case is made for the assessment of punitive or vindictive damages, which may operate as a punishment in the interest of society as well as for the doing of a willful personal injury to a fellow mortal: *Johnson* v. *Jenkins*, 24 N. Y. 252; *Thorn* v. *Knapp*, 42 N. Y. 474 (1 Am. Rep. 561); *Davis* v. *Slagle*, 27 Mo. 600. The court, as we think very properly, told the jury that such an unproven charge of unchastity might be considered in connection with all the rest of the testimony in aggravation of damages.

3. It is further contended that the instruction is faulty in characterizing such a case as being worse for the defendant than if there had been a simple denial of the contract of marriage. The court simply told the jury what was the fact under the law. The breach, attended with an unfounded charge of unchastity, or an unsuccessful attempt to justify such a charge, is certainly a worse case than if there had been a simple refusal to carry out the marriage contract unattended with such an imputation, because in itself it affords the very grounds for the aggravation of damages. There is no intimation as to what

the damages should be. The two kinds of cases are simply put in comparison as a method of explaining to the jury when and under what circumstances they should, and the conditions under which they should not, visit the defendant with aggravated damages. The jury could not have understood that they should increase the damages at any rate. That was a matter left for them to determine under the testimony. The objection is not well taken.

4. During the progress of the trial plaintiff introduced and had read to the jury, over the objections of defendant, certain resolutions which were adopted by Fairview Lodge, No. 560, I. O. G. T., June 26, 1892, of which lodge plaintiff and defendant were members, purporting to extend to them the congratulations of the lodge upon their supposed marriage, a copy of which was directed to be forwarded to them. The ruling of the court in this regard is assigned as error. The reasons assigned for the objection are that the resolutions do not appear to have been prompted by any conduct observed between the parties, but upon information which proved to have been false, and that it was incompetent for the purpose of proving an executory promise of marriage. The evident object of this testimony was to show that a closer intimacy than the ordinary relations of friendship, such as usually exist between members of fraternal societies, obtained between the parties. It is altogether improbable that unless such intimacy had been previously observed the lodge would have been so ready to adopt the resolutions, without definite knowledge of the supposed fact upon which they were based. The acts of the parties probably gave coloring to the reported marriage, as it is apparent from the resolutions that they were attentive and active members of the order. So that they have some tendency, remote and inferential though it may be, to show an existing relationship consistent with their engagement, and how their

demeanor towards one another was regarded among their friends and associates. In this view they corroborate in some small measure the proof offered by the plaintiff of the existence of the engagement between them at that time.

5.  After the commencement of the action, the defendant made a statement to which he subscribed, and had it published in the Portland Chronicle, in reply to an article which had previously appeared in the Sunday Mercury. In the course of this statement he makes use of language as follows: "They (the Mercury people) prepared to espouse the cause of the notorious woman (the plaintiff) who knows their characters, and who informed me herself that one of the proprietors of the Mercury was guilty of a much more flagrant offense than she charges me with." "As to the published statement concerning my relations with Mrs. Osmun, they are based on her charges, and are nearly all false. In the first place, she is not the Miss, but a divorced woman of a man in Chicago, who secured a divorce on the grounds of her having been false to him, and thereby contracted and communicated to him a bad disease." "When I first became acquainted with her (the plaintiff) it was through her uncle and aunt coming into my building and opening a bakery. For some time I supposed she was a respectable woman, and in time I saw by her conversation, her conduct with other men, and by what men told me, that she was not a virtuous woman. In fact, she told me that she was not virtuous, and I have the sworn statement of one man, given voluntarily, that the first time he ever met her was on the street, that he winked at her, and she gave him the sign to follow, and he spent the night with her at an hotel." This published statement went to the jury over the objections of defendant. We think it was properly admitted as tending to show the animus of defendant in refusing to perform the marriage contract, upon like grounds as unproved

allegations of unchastity in the pleadings may be considered in aggravation of damages.

For like reasons the insulting letter addressed by defendant to plaintiff after the commencement of the action was properly admitted. We are aware that there are good authorities against the admission of the statement and this letter in evidence. The reasons upon which they proceed are that they involve matters or transactions occurring subsequent to the commencement of the action, which should not be permitted to contribute to an increase of damages above such as were contemplated by the plaintiff when the action was begun *(Leavitt* v. *Cutler,* 37 Wis. 46; *Greenleaf* v. *McColley,* 14 N. H. 303), and because they require the consideration of an independent tort: 2 Sedgwick on Damages, § 640, note 1. But if we are right in our position that an unfounded charge of unchastity incorporated in the answer is cause for aggravation of damages, then, logically, these authorities are wrong: 3 Sutherland on Damages, 321, note 3. STRAHAN, J., in *Kelly* v. *Highf*ield, 15 Or. 290 (14 Pac. 794), says: "There can be no doubt, if the defendant's desertion of the plaintiff was without cause, or his conduct at the time toward her, or afterwards, was harsh, cruel, or malicious, or if at any time, even upon the trial, he makes a wrongful attempt to blacken her name or reputation, the jury have a right to consider it, and may, if they think proper, add something to the amount of damages on account of such new or additional wrong." So, in this case, if the contractual relations were wantonly broken off by the defendant, and he afterwards willfully and maliciously persisted in casting imputations against the plaintiff's character through the public press, and by inditing to her indecent and insulting letters, whether done before or after the commencement of the action, such acts may be considered as a reflex of the defendant's wicked incentive for severing

such relations, and taken into account by the jury in awarding damages.

6.  There was some evidence introduced by defendant tending to show that prior to the alleged breach a conspiracy had been entered into between the plaintiff and one M. J. Santry to blackmail the defendant, and to extort money from him by means of this litigation.  Whether or not there was a prima facie case of conspiracy sufficient to go to the jury we are not called upon to decide.  It is sufficient to say that all the evidence offered to establish such alleged conspiracy was submitted to them, except certain admissions and acts of Santry, the rejection of which is assigned as error.  Dr. C. E. Hill, while a witness for defendant, after testifying to having overheard some parties, in the presence of the plaintiff and Santry, narrate some "rather smutty" stories, was asked a further question, which was objected to, and defendant's counsel stated:  "We propose to prove by this witness that Santry, about this time and after this time, claimed to be interested in this litigation, and to have a part in it, and claimed that they were to divide whatever they should get out of Winters."  Later on counsel, addressing the witness, said:  "You may state whether or not, on or about that time, you heard Santry state what the agreement between him and Mrs. Osmun was, with regard to dividing the money they should get out of Mr. Winters."  This is enough to elucidate the nature of the testimony sought to be elicited.  It relates simply to admissions and statements of Santry, while not in the presence of plaintiff, touching the supposed conspiracy that had been entered into between the parties to extort money from Winters. As it respects such testimony, the rule seems to be as laid down in *Metcalf* v. *Connor*, 12 Am. Dec. 340, as follows: "Any declarations by one of the party at the time of committing the unlawful act, are, no doubt, not only evidence

against himself, but, as being a part of the res gestae, and tending to determine the quality of the act, are also evidence against the rest of the party, who are equally as responsible as if they had themselves done the act.  But what one of the party may have been heard to say at any other time as to the share which others had in the transaction, or as to the object of the conspiracy, cannot be admitted as evidence to affect them, for it has been solemnly decided that a confession is evidence only against the person himself who makes the confession. and not against others."   This rule is explicitly sanctioned and upheld in *Sheppard* v. *Yocum,* 10 Or. at page 417, and authorities there cited.   See also *Miller* v. *Barber,* 66 N. Y. 558, 567.  And it amply supports the action of the court below.   Winters was asked, while a witness in his own behalf, whether or not Santry came to him after the action was commenced, claiming to have the authority, and proposed to settle the case for a certain amount, and represented that plaintiff would accede to the terms indicated; and it is claimed that the refusal to permit him to answer was also error.   But the evidence which the question indicates might be elicited does not appear to be such as would establish acts in the execution of the alleged conspiracy, and, besides, the action had been commenced, and was then in the hands of her attorneys, and it is not shown that Santry was authorized to compromise with the defendant.

7.   It is claimed that in the cross examination of the defendant, while a witness in his own behalf, plaintiff's counsel was permitted to examine him touching things entirely outside of and beyond the matters inquired of on his examination in chief;  that is to say, plaintiff was allowed to interrogate the witness in respect to shorthand notes of his testimony given at a former trial, which was not germane to the direct examination at the present trial.

The inquiry, however, went to matters which were pertinent to plaintiff's cause, and might have been introduced by her in the first instance. If she exceeded the proper bounds of cross examination, the testimony became as much her own as if introduced by her. Such examination became subject to the same rules as a direct examination upon her own account:. Hill's Code, § 837. It was discretionary with the lower court whether the testimony should be introduced then and in that manner: *Long* v. *Lander,* 10 Or. at page 178. It was, perhaps, irregularly gotten to the jury, but we cannot see that the course which the court allowed to be pursued substantially affected any of defendant's rights. Possibly it may have been proper for impeachment. This, however, we do not decide, as it does not appear to have been introduced for that purpose.

8. During the trial the defendant offered in evidence a letter in pencil addressed to defendant's attorneys at Chicago, and purporting to have been written by the plaintiff's former husband, of which the following is a copy:

"Chicago, January 29th, 1893.

Ferguson & Goodnough.

Dear Sirs: I think I can do better on the other side of the fence. I got a letter the other day to that effect.

Yours,                  Fred A. Osmun."

It was introduced for the avowed purpose of explaining the averment in the answer, "that at various times in the year 1891, at Chicago, Illinois, and at Pontiac, Michigan, the plaintiff was guilty of lewd and lascivious cohabitation with Deville Dodge," and his failure to offer any evidence in support of said averment. Counsel for plaintiff had objected to the introduction of this letter, but at this time they agreed with counsel for defendant that it might be read to the jury upon condition that a certain deposition of

the said Fred A. Osmun, which had been taken in behalf
of defendant, but which on account of some irregularity
was subject to objections, should also go in evidence, so
both the letter and the deposition went to the jury.   At
the argument, one of plaintiff's counsel sought to impeach
the genuineness of the letter by a comparison, in the pres-
ence of the jury, of the handwriting and the signature with
the signature contained on each page of the deposition, to
which procedure the defendant objected, but was over-
ruled by the court, and the question as to the authenticity
and genuineness of said letter and signature was submitted
to the jury.   Defendant contends that, as the plaintiff
agreed to allow the letter to be read to the jury, she was
estopped to question its genuineness, and that the court
erred in permitting her to do so, and that it further erred
in submitting the question to the jury upon a simple com-
parison of · the handwriting.   The controversy, judging
from the record, appears to us about like this:   Defendant
was seeking to introduce the letter for a purpose which
would go to his advantage.   The deposition of Osmun had
been taken, and might have been introduced by · either
party, providing the certification and transmission were
regular, but they were not, as it appeared.   This deposition
was supposed to be favorable to plaintiff, but the letter
does not appear to have been made a part of it.   So that
the agreement was but a mutual concession that defendant
might introduce the letter, and the plaintiff the deposition,
as the evidence of the respective parties.   As to the letter,
it was simply a waiver of the observance of the rules touch-
ing proof which would identify and qualify it as proper to
go to the jury, but not an admission that it was the gen-
uine letter of Osmun.   This is the view the court below
took of the situation and we believe it to be correct.   Nor
did the court err in submitting the question whether or
not the letter is genuine to the jury.   Evidence respecting

handwriting may be given by comparison, made by a witness skilled in such matters, or by the jury, with writings admitted or treated as genuine by the party against whom the evidence is offered: Hill's Code, § 765. No question was raised as respects the signature to the deposition. It was admitted to be Osmun's genuine signature, and it was proper to submit the question touching the genuineness of the letter to the jury upon their comparison of the handwriting with the signature to the deposition.

9. After verdict and before judgment, the defendant moved for a new trial, based principally upon the ground of the misconduct of two of the jurors during the trial. The motion was supported by affidavits and opposed by counter affidavits. It appears that the misconduct complained of occurred October 25, and was observed at the time by one of defendant's counsel, but the verdict was not rendered until October 29. The court below overruled the motion, and refused a new trial, and its action in this regard is assigned as error. The respondent contends, first, that an order refusing a new trial is not reviewable on appeal; and, second, it was not error to disallow the motion. Waiving the first question, the matter may be disposed of on the second. Assuming that the misconduct of the jurors was sufficient to disqualify them from further participating in the trial, we think the objection came too late. The acts complained of were committed some four days prior to the rendition of the verdict, and while the cause was yet in the hands of the jury. The defendant was cognizant of such acts all the while, and should have brought them to the knowledge of the court at once, and had the jury discharged or recast. By taking his chances before jurors, whom he declares to have been disqualified, when he could have had a hearing before verdict, he has waived the objection. SHIPPEN, J., in *Berry* v. *DeWitt,* *27 Fed. 724,* says: "Such misconduct of a juror during

the trial, if known to the party at the time of its occurrence, and not made the subject of a motion to the court, is waived.    A party cannot know, during the trial, a fatal objection arising from the misconduct of a juror upon the trial, and keep silence, and take advantage of it in the event of an adverse verdict.    He is not permitted to speculate upon the chances of a verdict."    This doctrine is supported by numerous cases, and appears to be well settled:    See *State* v. *Tuller,* 34 Conn. 280; *Consolidated Ice-Mach. Co.* v. *Trenton Hygeian Ice Co.,* 57 Fed. 901; *Cogswell* v. *State,* 49 Ga. 103; *Martin* v. *Tidwell,* 36 Ga. 345; *Stampofski* v. *Steffens,* 79 Ill. 306; *Hussey* v. *Allen,* 59 Me. 269; *Rowe* v. *Canney,* 139 Mass. 41 (29 N. E. 219); *Koester* v. *City of Ottumwa,* 34 Iowa, 41; *Gurney* v. *Minneapolis Ry. Co.,* 41 Minn. 223 (43 N. W. 2); *Hill* v. *Greenwood,* 160 Mass. 256 (35 N. E. 668).

10.    The question made touching excessive damages not being specified as a ground of error in the notice of appeal, cannot be examined here, even if it was otherwise competent for this court to consider it.    There are other exceptions to instructions given by the court, and to others asked and refused.    The former opinion rendered in this case (25 Or. 260, 35 Pac. 25), is decisive of two of them, to wit: the effect of seduction as an element in the aggravation of damages, and the question touching the alleged seduction by means of force and violence.    This latter was a question for the jury, and was properly submitted to their consideration.    The others we have carefully examined, and find that the court below is not in error regarding them.

AFFIRMED.