Argued February 17, decided March 23, rehearing denied April 27, 1909.

# CROSBY *v.* PORTLAND RY. CO.

[100 Pac. 300; 101 Pac. 204.]

APPEAL AND ERROR—HARMLESS ERROR—RULING ON MOTION FOR NON-SUIT.

1. Though plaintiff, when resting, failed to offer proof sufficient to go to the jury, the denial of a nonsuit will not be disturbed if the omission is thereafter supplied.

TRIAL—RECEPTION OF EVIDENCE—ORDER OF PROOF—DISCRETION OF COURT.

2. In an action for injuries claimed to have been caused by an electric shock in passing under a trolley wire, the discretion of the court as to the order of proof was not improperly exercised in admitting in rebuttal plaintiff's shoe offered, not only on account of its burned appearance but to show the nails which the evidence showed may have served as a conductor through contact with the nails in the boards between the rails where plaintiff stood.

TRIAL—RECEPTION OF EVIDENCE—ORDER OF PROOF—DISCRETION OF COURT.

3. Though testimony offered in rebuttal is properly a part of the case in chief, its admission is a matter within the sound discretion of the court.

APPEAL AND ERROR—REVIEW—FINDING OF FACT—QUESTION FOR JURY.

4. Where there is room for a difference of opinion on a question of fact, it is a matter for the jury, whose finding is not subject to review.

ELECTRICITY—SAFETY OF TROLLEY WIRES AS TO PEDESTRIANS—DUTY OF STREET RAILROAD COMPANY.

5. The public has at all times the right to the use of its highways, and it is incumbent on a street railroad company to keep its wires in a reasonably safe condition as to pedestrians desiring to cross a street at any point.

ELECTRICITY—INJURIES FROM SAGGING TROLLEY WIRES—CONTRIBUTORY NEGLIGENCE.

6. Where sagging trolley wires, left in that condition for more than ten days, did not hang low enough to be dangerous to persons crossing a public street, and their continued use in propelling cars was sufficient indication of their security to lead a reasonably prudent person to rely on their safety, the defense to an action for injuries caused by a falling wire, that plaintiff was negligent in crossing the street with full knowledge thereof, was not sufficient to preclude a recovery.

EVIDENCE—OPINION EVIDENCE—LAY WITNESSES—TESTIMONY AS TO PERSONAL INJURIES.

7. In an action for personal injuries claimed to have been caused by an electric shock, testimony of lay witnesses that they were intimately acquainted with plaintiff, and that her health and general physical condition since receiving the shock, as compared with her former appearance, had materially changed, indicating her health to have become impaired, was properly admitted over the objection that the facts testified to were within the exclusive province of the jury, and not proper subjects for opinion evidence of laymen.

EVIDENCE—OPINION EVIDENCE—SPECIAL KNOWLEDGE AS TO SUBJECT-MATTER—PHYSICAL CONDITION.

8. That witnesses to the comparative general appearance of the physical condition of a person are not physicians or surgeons is not an objection to their evidence.

APPEAL AND ERROR—HARMLESS ERROR—OPINION EVIDENCE—HYPO-
THETICAL QUESTIONS—OMISSION OF FACTS.

9. It does not necessarily follow that an objecting party is prejudiced by the omission of facts in a hypothetical question, especially if they are clearly brought out during the course of the subsequent direct and cross-examination.

EVIDENCE—OPINION EVIDENCE—COMPETENCY OF EXPERT—HEALTH AND
PHYSICAL CONDITION.

10. An expert witness on all questions bearing on the health and physical condition of a person need not be duly licensed to practice medicine.

EVIDENCE—OPINION EVIDENCE — COMPETENCY OF EXPERT—EFFECT OF
ELECTRIC SHOCK.

11. An expert witness called to testify as to the effect of an electric shock in a case wherein plaintiff claimed to have received one from a sagging trolley wire stated that he was a university graduate electrical engineer; that he had six years' practical experience as an electrician, four years of which was as a dynamo tender of an electric company, one year as a shopman, and about one year as an electrical contractor; that he had received quite a number of shocks, had observed others, and was familiar with the effects produced by personal contact with live wires; and that at the place of proximity by plaintiff with the trolley wire there was an electric current of between 500 and 550 volts. *Held*, that he was *prima facie* an expert for the purposes of the inquiry.

EVIDENCE—OPINION EVIDENCE—COMPETENCY OF EXPERTS—DETERMINA-
TION.

12. It is for the court to determine in the first instance whether a witness offered as an expert possesses the proper qualifications, leaving the weight of the testimony of such witness, if admitted, to the jury.

EVIDENCE—OPINION EVIDENCE—PERSONAL INJURIES—TESTIMONY OF
ATTENDING PHYSICIAN.

13. In an action for personal injuries, a physician who waited on and treated plaintiff was properly admitted to explain her physical condition, sickness, time of recovery, and the probable effect of the accident on her general health.

EVIDENCE—OPINION EVIDENCE—PERSONAL INJURIES—HYPOTHETICAL
QUESTION—INCLUSION OF EVERY DETAIL OF FACTS.

14. In an action for personal injuries, testimony was given tending to support all the facts alluded to in the hypothetical question, and which were ample to give the witness a clear knowledge of plaintiff's physical condition at the time of the accident, together with an adequate statement of the manner, time, and place of the accident with all that followed, including plaintiff's subsequent physical condition, experience, and treatment administered. *Held*, that only such facts are required as are requisite to form an intelligent opinion on the subject considered, and it was not error to admit the hypothetical question because not including every detail of the facts of the accident.

APPEAL AND ERROR — HARMLESS ERROR—EXAMINATION OF EXPERT
WITNESS.

15. In a personal injury case, it was not ground for reversal that a hypothetical question improperly assumed that plaintiff was "on the car track" at the time in question, where it is apparent from the witness' answers that he was not misled.

WORDS AND PHRASES—"CAR TRACK."

16. The words "car track," used in referring to a person as standing on the car track of a street railroad, clearly refer to the space necessarily covered by the cars in passing.

ELECTRICITY — ACTION FOR INJURIES — INSTRUCTIONS AS TO PRESUMPTIONS AND BURDEN OF PROOF.

17. In an action for injuries claimed to have been caused by a shock from a trolley wire, there was no error in instructing the jury that, after it was shown that the accident was caused by the breaking or sagging of the wire, it raised a presumption of law as to defendant's negligence, and, unless it appeared that there was contributory negligence sufficient to make plaintiff's acts the proximate cause thereof, the burden of proof was shifted to defendant to establish by a preponderance of the evidence that it was not at fault, and that the accident happened without negligence or want of care on its part.

APPEAL AND ERROR—REVIEW—PRESUMPTIONS.

18. A trial judge will not be presumed to have abused his discretion in admitting on rebuttal testimony properly a part of the case in chief.

TRIAL—ORDER OF PROOF—JUDICIAL DISCRETION.

19. The manner in which a trial court may satisfy itself as to the propriety of admitting evidence out of its order in the absence of a statute to the contrary is discretionary.

ELECTRICITY—NEGLIGENCE—PRESUMPTIONS.

20. That a trolley wire broke away from its fastenings, and sagged toward the street in plain view of travelers for two weeks, warranted a presumption of negligence of the electric railway company, and, the company having made no attempt, in a suit against it for injury to one passing under the wire to explain the cause of the sagging, the court could determine whether the negligence was such as to entitle that feature to be taken from the jury.

APPEAL AND ERROR—HARMLESS ERROR—FAVORABLE INSTRUCTIONS.

21. One may not complain of error in an instruction which is favorable to him.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Statement by MR. JUSTICE KING.

This is an action for personal injuries, alleged to have occurred about as follows:

That defendant on and prior to July 12, 1906, was, and is, a corporation engaged in the business of running street cars propelled by electrical power; that, in order to move its cars, defendant maintained a number of overhead wires, one being on Grand avenue, in front of plaintiff's home, which wire the company negligently and carelessly allowed to fall from its fastenings to and upon the avenue in a charged condition, thereby endangering the lives, limbs, and safety of the public; that on the morning of the date named plaintiff was

going from her home to her labor, and, without seeing the wire, came in contact therewith, receiving a severe electrical shock, burning and temporarily paralyzing, and making her sick to such an extent that she has not since fully recovered; that the injuries to her nervous system thus received are permanent in character, resulting in great bodily and mental suffering, and requiring the attendance of a physician at much expense, care, and attention, for which damages are demanded.

Defendant, after, in effect, admitting its corporate capacity, the ownership and control of the wire, its breaking and falling in the street, and plaintiff's coming in contact therewith, as an affirmative defense avers that about two weeks prior to the date named, the wire, at and near the crossing, broke away from its fastenings, and hung and sagged down toward the street, in which condition it continued in plain view of every one walking along or crossing the avenue or street, with the apparent probability of its dropping near to the ground, to all of which, including the dangers incident thereto, plaintiff's attention had been directed to such an extent that she observed, understood, and fully realized the dangers thereof, but that notwithstanding her knowledge of these conditions she attempted, in broad daylight, to cross directly under the broken and sagging wire, and immediately behind a passing street car; that in attempting to do so plaintiff, seeing the wire sagging in front of her, endeavored to stoop under it, when she was lightly tapped by the wire without any resultant injury; that she could, with perfect safety, have crossed the street within a distance of 50 to 60 feet either north or south of the place of the accident, all of which was well known to her at the time; that plaintiff therefore acted in a reckless, careless, and negligent manner, which negligent act was the direct and proximate cause of any injury she may

have sustained, and thereby assumed all the risk thus incurred.

The cause was tried before a jury, resulting in a verdict for plaintiff in the sum of $3,000, and from a judgment thereon defendant appeals.          AFFIRMED.

For appellant there was a brief over the names of *Mr. Dan J. Malarkey, Mr. Ephraim B. Seabrook, Messrs. Wilbur & Spencer,* and *Mr. Arthur M. Dibble,* with an oral argument by *Mr. Dibble.*

For respondent there was a brief and an oral argument by *Mr. Henry E. McGinn.*

MR. JUSTICE KING delivered the opinion of the court.

The testimony tends to establish the following facts: Plaintiff at the time of the accident was twenty-two years of age, in good health, and residing on the west side of Grand avenue, in the City of Portland, and a little south of, and on the opposite side of the street from, Neustadter's shirt factory, where she had been employed for about two years. On the morning of July 12, 1906, while crossing the avenue from her home to the factory, a trolley wire of the company, which had for some time been sagging, fell, striking plaintiff on the forehead, and, glancing down her face, struck her two or three times, the effect of which was to daze and cause her to stagger, and to be unable to hear one nearby who called to her. She remained in such condition for a few minutes, and the first incident of which she appears to have been cognizant was that her mother, who had met her at the sidewalk, was caring for her at their home, when she discovered that one side of her head and body was numb and without feeling. After remaining at home about 30 minutes, she returned to her work, but, finding herself unable to resume work, on request of her employer, returned home, and, owing to her nervous and impaired physical

condition, did not renew her occupation at the factory until in September following. Soon after returning from the factory, a physician was called, who administered treatment, but her impaired physical condition failed to respond thereto for at least three or four days, when she began to improve, but her sense of taste and smell remained materially affected for some weeks thereafter. Plaintiff continued at home in poor health for two or three weeks, after which she went to Seaside, where she remained about one month, during which time she suffered, more or less, among other ailments, with pains in one side, arm, and back, which continued, and from which condition she had not fully recovered at the time of the trial. The plaintiff had prior to the accident often passed back and forth across the avenue at and near the point of the mishap, and for a period of at least ten days had noticed the trolley wire out of place and sagging but that it was not low enough for any one in crossing to come in contact therewith. She knew the wire carried a strong current of electricity, a contact with which would be very dangerous. The avenue at the place of the accident was paved with wooden boards between and on each side of the rails. The casualty occurred on an exceedingly hot day, without rain having fallen in the vicinity for some time previous thereto. It was the custom of the city to sprinkle the avenue at and near this place daily. The wire causing the injury had been used in the propelling of street cars by defendant, and a car had passed under the wire immediately before its breakage, and plaintiff at the time of receiving the shock was on a regular crosswalk, and between the rails on the east track of the company's line.

1. The first error assigned demanding consideration relates to the action of the trial court in overruling defendant's motion for nonsuit, and in refusing to direct

a verdict in its favor. It has become a well-settled rule in this State that, although plaintiff at the time of resting may have failed to offer proof sufficient to entitle the cause to be submitted to the jury, a ruling which denies such motion will not be disturbed if the omission is thereafter supplied: *Trickey* v. *Clark*, 50 Or. 516, 519 (93 Pac. 457).

2. In this connection defendant maintains that, without the testimony introduced by plaintiff in rebuttal, the showing presented was inadequate to sustain a judgment, and that by reason thereof defendant was entitled to a directed verdict, and that the court accordingly erred in permitting the introduction of evidence, on rebuttal, of plaintiff's shoe, as well as in error in admitting any of the testimony adduced in reference thereto. The shoe apparently was offered, not only on account of its slightly burned appearance, but for the purpose of disclosing the nails therein, which the evidence discloses may have served as a conductor of an electrical current through their contact with the nails in the boards between the rails where plaintiff stood at the time of receiving the shock.

3. This testimony, properly speaking, was a part of plaintiff's case in chief, but the time and manner of its admission was a matter within the sound discretion of the court (Wigmore, Ev. §§ 1867, 1873), which discretion, we think, was not improperly exercised.

4. It can make no difference under the showing made where plaintiff was standing at the time of the accident, nor that dry boards are nonconductors of electricity, for circumstances are disclosed whereby the shock may have been received regardless of this feature. Much evidence was introduced by defendant in support of its theory that plaintiff could not have received a shock, if, at the time of the accident, she was upon the planks between the rails; but, whatever may be the

opinion of defendant's expert witnesses upon this subject, the fact remains that plaintiff was, in fact, struck by the wire, and did receive an electrical shock, from which substantial injuries resulted. True, there is room for a difference of opinion upon the question, but this was a matter for the jury, the findings of which are not subject to review here. It was also disclosed, if not conceded, that, if the boards were damp, they were conductors of electricity, and the shock could have been received in that manner. Hence, while it was established that the day was very dry and warm, this feature is met by the testimony to the effect that the street was usually sprinkled, and in that locality "always looked damp in the morning," to say nothing of the testimony respecting the shoe introduced in evidence and the effect it may have had on the occasion.

5. Nor is the defense that plaintiff was negligent in crossing the street, with full knowledge of the sagging wire, sufficient, under the record, to preclude a recovery. That this avenue or street is a public thoroughfare, and that the wire had been left in a sagging condition for more than ten days, was unquestioned. In fact, it was, and is, admitted by defendant. Under the circumstances here revealed, it would be unreasonable to hold it necessary for people desiring to cross a street to abandon one crosswalk for another located at some other and more inconvenient point. The public has at all times a right to the use of its highways, and it was incumbent upon defendant to keep its wires along such public thoroughfare in a reasonably safe condition, and it is conceded this was not done.

6. Had the wire been lying in the street, or sufficiently near the ground to be dangerous, and plaintiff, with full knowledge thereof, consciously walked into it, a different question would be presented, and defendant's contention in reference thereto might under such

circumstances be tenable: *Carroll* v. *Grande Ronde Elec. Co.* 52 Or. 370 (97 Pac. 552). But, regardless of what might be the legal effect under such circumstances, it appears in this instance that the wires, although sagging, were not hanging low enough to be dangerous to persons crossing, and their continued use in propelling cars was sufficient indication of their security to lead a reasonably prudent person to rely on their safety. Considering the entire record, ample testimony was adduced to justify a submission of the cause to the jury, from which it follows that the motion to direct a verdict in defendant's favor was properly denied.

7. The next question requiring attention relates to the admission of expert testimony. Lay witnesses were called, and testified to the effect that they were intimately acquainted with plaintiff prior to the accident, saw her frequently and observed her condition immedaitely after, and for some time subsequent to, the accident, and that her health and general physical condition since receiving the shock, as compared with her former appearance, had materially changed, indicating her health to have become impaired. It is contended that this line of inquiry should have been excluded on the ground that the facts testified to were within the exclusive province of the jury, and not proper subjects for opinion evidence of laymen. Our attention is directed to *Burton* v. *Severance,* 22 Or. 91 (29 Pac. 200), and *Chan Sing* v. *Portland,* 37 Or. 68 (60 Pac. 718), in support of this position. The effect of these cases, however, was merely to hold that witnesses should not be permitted to give their views concerning any of the matters in issue, nor to give opinions on questions which do not call for expert testimony, for the reason that such matters are within the exclusive providence of the jury. But the testimony given in the case under consideration relative to the general appearance and state of plaintiff's

health after the accident, as compared to her usual physical condition prior thereto, are facts which the average layman is competent to observe, and which the jury is entitled to consider in determining whether the accident occasioned the alleged injury. If, for example, A loses an arm in an accident, the loss of which becomes a subject of inquiry in an action for damages, and a lay witness is called, who testifies that he knew plaintiff in such a case before the accident, saw him frequently and noticed nothing unusual in his appearance, but that he met him shortly afterwards, when he observed that he had but one arm and appeared to be suffering from the wound caused by the loss, it could not well be said that this was an invasion of the province of the jury; for the facts elicited by these statements would tend to disclose, when coupled with other incidents and facts presented, a basis from which the jury could infer that the accident complained of was the proximate cause of the loss of the limb.

8. Nor would such evidence be subject to the objection that the witness was not a physician or surgeon; for evidence of this class, like that under consideration, relates only to the comparative general appearance of the physical condition of the person respecting whom the testimony was given. In *Bridge* v. *City of Oshkosh*, 71 Wis. 363 (37 N. W. 409), questions similar in import to those here complained of were asked of lay witnesses, and were answered over the objections of the defendant, the admission of which was assigned as error, in reference to which the court on appeal observes: "Under well-established rules of law applicable to cases of this kind, where personal injuries to the plaintiff are the subject of inquiry and the basis for awarding damages, evidence of the kind admitted by the court in this case is clearly admissible. * * The propriety of permitting a witness who is not an expert, but who is acquainted

with the injured person and has seen him frequently before and after the injury, to testify as to any changes either in his physical or mental condition, is established. * *" Also Wigmore, Ev. § 568; *Robinson* v. *Exempt Fire Co.* 103 Cal. 1, 5 (36 Pac. 955: 24 L. R. A. 715: 42 Am. Rep. 93) ; *Parker* v. *Boston & Hingham S. Co.* 109 Mass. 449, 451; *Evans* v. *People,* 12 Mich. 36; *Isenhour* v. *State,* 157 Ind. 517 (62 N. E. 40: 87 Am. St. Rep. 236).

9. It is next urged, in this connection, that the court erred in permitting Albert Meserve, a witness for plaintiff, to testify as an electrical expert as to the effect the wire striking the plaintiff might have upon her general physical condition, and as to what, in his opinion, was the cause of plaintiff's suffering, as disclosed by a hypothetical question submitted to him. Before giving his views on the subject, the witness stated that he was a graduate of the electrical engineering department of the University of Oregon; that he had had six years' practical experience as an electrician, four years of which was as a dynamo tender of the Portland General Electric Co., one year as a shopman, and about one year as an electrical contractor; that he had received quite a number of shocks, had observed others, and was familiar with the effects produced by personal contact with live wires; and that at the place of proximity by the plaintiff with the trolley wire there was an electric current of between 500 and 550 volts. The witness was then asked to give some of the symptoms from which it might be inferred that a person had received an electrical shock, and over defendant's objections, responded: "A shock of 500 volts directly through the body will invariably raise a blister or burn. As to the condition on the nerves, that depends upon the person. The personal equation would come in there, because a person who is not naturally

nervous will not be particularly affected, so far as their nerves are concerned. My observation shows that, where one is very nervous, that their nervous system is quite heavily shocked. The length to which the shock will last depends upon the person and upon the amount of voltage. In this case, of course, if it would be 500, of course, you would only consider that." He was then asked: "In what direction in the human body does electricity travel; along what avenues?" To this he replied, without objection, that he was not a medical expert, and could not say, but as a result of his studies in biology and physics would say that an electric current would, as a rule, take the path of the nerves as being the lines of least resistance, passing through the body in either direction, depending upon the direction in which the current was flowing. To this inquiry there was added: "Where is the very worst place, Mr. Meserve, that one can receive an electrical shock, being struck in what part of the body?" Objections to this question were interposed, like those of the preceding interrogatories, as to its relevancy, competency, and materiality, and that the proper foundation had not been laid therefor, which, being overruled, the witness answered: "Well, I should say that the heart was probably the worst part, because they would be apt to be killed." A hypothetical question was thereafter asked the witness, narrating, in a brief manner, the circumstances leading up to the accident, including what purported to have occurred, together with a reference to plaintiff's condition thereafter, concerning which the witness was requested to state what, under such circumstances, he would say the person was suffering from, to which, over defendant's objection, he answered: "I would say she might be suffering from an electrical shock, so far as I have observed." Defendant maintains that the witness was not shown qualified to testify

relative to the effect the falling of a live wire might have upon the body of a person under the circumstances narrated to him, in support of which defendant's counsel direct our attention to *State* v. *Anderson,* 10 Or. 448; *State* v. *Abrams,* 11 Or. 169 (8 Pac. 327) ; *Oregon Pot. Co.* v. *Kern,* 30 Or. 328 (47 Pac. 917) ; *Townley* v. *Oregon R. Co.* 33 Or. 323 (54 Pac. 150) ; *State* v. *Simonis,* 39 Or. 111 (65 Pac. 595) ; *Scott* v. *Astoria R. Co.* 43 Or. 26 (72 Pac. 594: 62 L. R. A. 543: 99 Am. St. Rep. 710). These cases hold that opinions, to be entitled to consideration by the jury, must be based upon facts appearing in the record, supplemented by a manifestation of ample knowledge on the part of the witness of the subject under consideration, to justify an expression of his opinion, and that hypothetical questions must include only such facts as are fairly deducible from the testimony presented. While the form of the hypothetical question propounded to Meserve does not come strictly within the rules announced in the cases mentioned, it does not follow that defendant was in any manner prejudiced thereby, especially since the omitted facts, if any, were clearly brought out during the course of his subsequent direct and cross examination.

10. Again, it is not required that an expert witness on all questions bearing upon the health and physical condition of a person shall be duly licensed to practice medicine.

11. As stated by Mr. Wigmore, in his work on Evidence (section 556), the special and peculiar experience necessary for a witness to give testimony as an expert "may have been attained, so far as legal rules go, in any way whatever. All the law requires is that it should have been attained." This testimony, says this eminent author, is usually, though not necessarily, found separately, and may be grouped into two classes: "There

is, first, the so-called 'practical' experience—the kind which is obtained casually and incidentally, yet steadily and adequately, in the course of some occupation or livelihood. From the advertising agent to the wood-chopper there is a long list of occupations in any one of which, and perhaps in that alone, the fitness will be obtained to acquire knowledge on a particular topic. There is, secondly, a systematic training, directed deliberately to the acquisition of fitness, and involving the study of a body of knowledge forming a branch of some science or art. This may be termed 'scientific' experience. Now the line, if any can be drawn, between these two, has no general legal significance. * * The question in each instance is whether the particular witness is fitted as to the matter in hand." In the case before us the witness discloses that he is familiar with the subject under discussion, and the court in admitting his testimony holds him to be *prima facie* an expert for the purposes of the inquiry, and the showing made respecting his qualifications we think fully justified the course pursued.

12. It is for the court to determine in the first instance whether a witness offered as an expert possesses the proper qualifications, leaving the weight of the testimony of such witness, if admitted, to the jury: 5 Enc. Ev. 533; *Thompson* v. *Ish,* 99 Mo. 160 (12 S. W. 510: 17 Am. Rep. 552, 562).

13. In *State* v. *Megorden,* 49 Or. 267 (88 Pac. 306), a physician was called to testify as an expert, and was asked what the effect of a blow on a person's head, describing it as detailed by the two preceding witnesses, would have as to dazing and confusing the person receiving it, and answered that it would affect his reasoning faculties for a few moments. When questioned concerning his qualifications, and before responding to the interrogatories mentioned, the witness stated that

he had neither seen nor had a case where a person was struck in the manner and place as detailed to him. Notwithstanding an objection was made to the inquiries on the grounds that the witness was not shown to be qualified as an expert along this line, the testimony was held admissible on the theory that, while the want of experience or knowledge of the particular facts therein questioned might lessen the weight to be given to his testimony, it would not affect the competency of a witness otherwise qualified. In *State* v. *Remington*, 50 Or. 99 (91 Pac. 473), a practicing physician, after having qualified as such, and after having given evidence of a medical nature, was asked if he had ever handled firearms, and, after having answered in the affirmative, and to the effect that he had handled a 30-30 rifle, knew the size cartridge it required, and how large a hole a slug fired from it would make, was permitted, over timely objections, to narrate to the jury the size of the aperture it would make in a picket of a fence, through which the ball from the rifle under consideration had been fired, the admission of which was assigned as error, but, on appeal, was held admissible. In view of the fact that testimony of the class mentioned is deemed admissible, and especially since a physician is held competent (after disclosing knowledge on the special subject) to testify as an expert in handling and effect, etc., of firearms, there can certainly be no valid objection to an electrician testifying what effect an electrical charge of between 500 and 550 volts, when considered in connection with other facts detailed in the hypothetical question asked Meserve, may have upon a person coming in proximity with the wire conducting it. Again, if, as in the Megorden case, a physician, after admitting his inexperience with patients receiving blows on the head similar to the one there considered, may be permitted to testify as to what, in

his opinion, would be the effect upon a person inflicted with such a blow, there was certainly no error committed in permitting Dr. Courtney, who waited upon and treated the plaintiff, to explain her physical condition, sickness, time of recovery, and the probable effect the accident had upon her general health.

14. In this connection, it is further argued that the hypothetical question propounded to Meserve was insufficient, and should have been excluded for the reason that every detail of the facts connected with the accident was not included, in support of which we are cited to *Maynard* v. *Oregon R. Co.* 43 Or. 63, 74 (72 Pac. 590). In that case, however, the hypothesis was based upon an assumed injury, which was not shown to exist, for which reason the evidence sought by it was inadmissible, while in the case under consideration testimony was given tending to support all the facts alluded to in the hypothetical question, and which were ample to give the witness a clear knowledge of plaintiff's physical condition at the time of the accident, together with an adequate statement of the manner, time when, and place in which the accident occurred, with all that followed, including plaintiff's subsequent physical condition, experience, and treatment administered. True, everything which transpired may not have been included in the narrative, but we do not deem a reference to each and every detail essential. Only such facts are required as are requisite to the forming of an intelligent opinion on the subject considered: Wigmore, Ev. § 682; *Pendleton* v. *Saunders*, 19 Or. 9, 25 (24 Pac. 506).

15. But it is argued that because the hypothesis assumed that plaintiff, at the time of receiving the shock, was "on the car track," such assumption is inconsistent with the evidence, in that plaintiff, when struck by the wire, was between, and not on, the rails. We think, however, in the light of the answers given by

Meserve, when considered as a whole, the expression "on the track," whatever its technical meaning may be, did not in any way mislead the witness.

16. Moreover, the "car track" as here used clearly has reference to the space necessarily covered by defendant's cars in passing: *Potter* v. *Leviton,* 199 Ill. 93 (64 N. E. 1029) ; *Delaware Can. Co.* v. *Whitehall,* 90 N. Y. 21.

17. It is next maintained that the court erred in instructing the jury, in substance, that after it was shown that the accident was caused by the breaking or sagging of the wire, which was the property of the defendant, it in law raised a presumption of negligence on its part, and that, unless it appeared there was contributory negligence on the part of the plaintiff sufficient to make her acts the proximate cause thereof, the burden of proof was shifted to defendant to establish, by a preponderance of the evidence, that it was not at fault, and that the accident happened without any negligence or want of care on its part. The point here presented was urged, but decided adversely to appellant's contention, in *Boyd* v. *Portland Elec. Ry. Co.* 41 Or. 336 (68 Pac. 810). In that case, under a similar state of facts, an instruction of like import was given by the trial court and upheld on appeal.

Some authorities from other jurisdictions are cited by counsel for defendant, which appear to sustain their contention on this point, but we are satisfied with the rule on the subject in force in this State.

The judgment is affirmed.          AFFIRMED.

---

Decided April 27, 1909.

## ON PETITION FOR REHEARING.

[101 Pac. 204.]

MR. JUSTICE KING delivered the opinion of the court.

18. It is first urged in support of defendant's petition for rehearing that prejudicial error was occasioned

by the admitting in rebuttal of the testimony offered by plaintiff with reference to and in the admission of her shoe in evidence. There can be no doubt that this was a matter resting within the sound discretion of the court. The court's discretion in such matters is a large one, an abuse of which will not be presumed: 9 Enc. Ev. 234. After a careful examination of the record, we were fully convinced that this was a matter concerning which no abuse of discretion was shown and so held; and, after a re-examination thereof, we are still of that opinion, and think there is little room for discussion upon the subject. Sections 132, 842, B. & C. Comp., expressly give to the court this discretionary power.

19. The manner in which the court may satisfy itself as to the propriety of permitting evidence to be introduced out of its order, in the absence of a statute to the contrary, is also a matter for its determination under the circumstances as they arise, which, like the admission of the testimony out of the usual order, is subject to review for abuse of discretion only. *State* v. *Hunsaker,* 16 Or. 497 (19 Pac. 605), to which our attention is directed, was a criminal case, and was reversed because, in the opinion of the appellate court, the trial court abused its discretion in the admission of the evidence there mentioned, and is not analogous to the case under consideration. It serves, however, to illustrate that a reversal may, and should, occur where there has been an abuse of the privilege there given the court, but not that a reversal must in all cases be granted where testimony is admitted in that manner. To so hold would be to ignore the plain provisions of the statute on the subject. The case of *Davis* v. *Emmons,* 32 Or. 389 (51 Pac. 652), is more in point. There it was contended that the court erred in permitting plain-

53 OR.——17

tiff to reopen the case after defendant had rested, and to call a witness to prove the original cause of action, in considering which the court at page 395 of 32 Or. (51 Pac. 653), of the opinion, states the rule thus: "The order of proof at the trial of a cause is a matter regulated by the sound discretion of the trial court (citing the Code), and, like all other questions of that character, will not be reviewed except for an abuse thereof, which is not apparent in the case at bar." For other cases discussing, applying, and adopting this principle, see 9 Enc. Ev. 232, note 1; *Bennett* v. *Stephens,* 8 Or. 444; *Osmun* v. *Winters,* 30 Or. 177 (46 Pac. 780); *Jones* v. *Peterson,* 44 Or. 161 (74 Pac. 661); *State* v. *Remington,* 50 Or. 99 (91 Pac. 473); *First Nat. Bank* v. *McCullough,* 50 Or. 509 (93 Pac. 366: 17 L. R. A. (N. S.), 1105).

20. It is also zealously insisted that we are at fault in holding there was no prejudicial error in the giving of the instruction relative to the "shifting of the burden of proof," etc. In the interest of brevity, as well as for the reason that we deemed the question clearly settled by previous decisions of this court, including the case of *Boyd* v. *Portland Elec. Co.* 41 Or. 336 (68 Pac. 810), which we cited with approval, we did not enter into an extended discussion of the subject. However, since it is still maintained that the holding in the Boyd case is not in conflict with defendant's contention here, we will further advert thereto. The construction complained of was as follows:

"In cases of this character, the law provides that where it is shown that an accident is caused by the breaking or sagging of a wire, or by something going wrong in the business of a defendant engaged, as this defendant was, in propelling cars by electricity by means of overhead wires, and it is further shown that a hanger which broke and a wire which sagged and which caused an accident were the property of and in

the custody and control of the defendant, *the law presumes then, or raises the presumption, that the defendant was negligent and that the accident was caused by its negligence. And when this is shown, provided there was no contributory negligence shown on the part of the plaintiff, the burden of proof is shifted to the defendant to show to your minds by a preponderance of evidence that it, the defendant, was not at fault, and that the accident happened without any negligence or want of ordinary care upon its part."*

The instruction quoted, with the exception of a slight variation of a few words to fit the case at hand, is the same as in the Boyd case. Indeed, it appears to have been taken from the instruction there given. The italicized part is the portion especially challenged, with respect to which the language in both cases is identical, and the similarity of the facts presented is ample to make the rules of law governing the evidence adduced applicable in both cases. But it is argued that the question here presented was not involved nor considered by the court in that case, in reference to which it is asserted that nowhere in the opinion can it be found that the point was there made or urged on appeal. The latter suggestion overlooks the fact that it is often not only unnecessary, but impracticable, to discuss minutely every point presented, or notice in the opinion each and every authority cited: *Kamp* v. *Kamp,* 59 N. Y. 212, 221. The effect from a legal standpoint must often be determined from the conclusions announced upon questions raised, argued, and submitted. An inspection of the briefs in the Boyd case on file in this court discloses that the point alluded to was not only properly raised in the trial court, but that error was predicated thereon, constituting one of the main points presented upon which a reversal was demanded.

It is true, however, that another point was first adverted to by the court, and there treated "as defendant's initial contention, and the one most strenuously

insisted upon"; but, in an examination thereof, the court considered and disposed of the other questions involved, resulting in an affirmance throughout of the action of the trial court, including therein the instruction above mentioned. However, the instruction there given, as well as the one here, was there and is here considered with reference only to the facts disclosed by the record, which in that case, as in this, were ample to justify the giving of the instruction. In the Boyd case it appeared the wire had fallen and for some time had remained hanging dangerously near the ground, while in the case under consideration defendant admitted, and, in fact, pleaded, in the answer "that some time about two weeks prior to the 12th day of July, 1906, the said trolley wire in front of No. 209 Grand avenue, by which the defendant operated its cars as aforesaid, broke away from its fastenings, and hung and sagged down toward the street in plain sight of every one crossing said street or walking along said street, and that said trolley wire and the fact that it had broken away from its fastenings and was sagging down towards the street and was liable at any moment to further sag or hang down toward the street, and the fact that said trolley wire was in a defective and broken condition was for two weeks prior to July 12, 1906, apparent to all persons and to this plaintiff, and that plaintiff during said two weeks prior to July 12, 1906, saw said broken trolley wire each day, and saw and was aware of its broken and defective condition, and the fact that it had broken away from its fastenings and was sagging down towards the street and was liable at any moment to further sag down toward the street, * * and the fact that said wire was charged with electricity and was a dangerous thing to come in contact with, the plaintiff well knew." The facts thus admitted were such that, without further explanation, negligence must necessarily be inferred therefrom. The

effect thereof was such as would afford no room among reasonable minds for a difference of opinion with respect thereto, leaving nothing for the jury to determine upon this point. Since no attempt was made to explain the cause of the sagging of the wire, and its remaining in such dangerous condition for the time stated, the court was privileged to determine whether the facts disclosed by the averments quoted constituted such negligence as to entitle that feature to be taken from the jury, and to instruct the jury accordingly (11 Enc. Pl. Pr. 131; *Crossen* v. *Grandy,* 42 Or. 282; 70 Pac. 906), leaving for their determination the defense urged as to plaintiff's contributory negligence, and the amount of damages, if any, to which she might be entitled. It has often been held that, where the uncontradicted facts disclose the negligence of the complainant to have been the proximate cause of an injury for which damages are sought, the court may so determine and take the question from the jury: *Blackburn* v. *Southern Pac. Co.* 34 Or. 215 (55 Pac. 225). In fact, instructions to that effect were requested by defendant herein, the refusal to give which was assigned as error. What reasons, then, can be urged for not permitting the same rule to be invoked in behalf of Plaintiff? None.

21. There is no occasion in this instance for the invoking of a distinction between a presumption of law and a presumption of fact. Whatever may be the distinction, if any, can have no application here. Under the facts conceded by defendant, not having been further explained, they were such that negligence was necessarily inferable therefrom, and in law constituted such an inference as presumes negligence, and it can make no difference, so far as the legal effect in this action is concerned, whether it be termed a presumption of law or a presumption of fact: *State* v. *Kelly,* 57 Iowa, 644 (11 N. W. 635). The defendant, as above

stated, admits the facts from which, in the absence of a further explanation thereof, but the one inference mentioned is deducible, and relied solely upon the alleged contributory negligence of the plaintiff as being the proximate cause of the injury, leaving that question, and the assessment of the damages, if any, for the jury's determination. The instruction therefore was more favorable to the defendant than it had reason to expect, from which it follows that no error can be predicated thereon.

Other errors are assigned in the petition, by reason of which it is argued that a rehearing should be granted; but, after a re-examination of the points urged, including all authorities cited and relied upon in support thereof, we conclude that sufficient cause is not shown to justify re-opening the case for further argument.

The petition is denied.

AFFIRMED: REHEARING DENIED.